# Wytheville.

BARNARD BUS LINES, INC. v. KATE BELL WEEKS.

June 18, 1931.

Present, Prentis, C. J., and Holt, Epes, Gregory and Browning, JJ.

The opinion states the case.

*McKinney & Settle* and *John W. Hester,* for the plaintiff in error.

*James S. Easley* and *R. S. Weaver, Jr.,* for the defendant in error.

GREGORY J., delivered the opinion of the court.

The Barnard Bus Lines, Incorporated, is here complaining of a judgment for $2,500.00 rendered against it by the trial court in an action upon a notice of motion for judgment brought by Kate Bell Weeks.

In the trial court Kate Bell Weeks was the plaintiff and the Barnard Bus Lines, Incorporated, the defendant, and they will be referred to as such in this opinion.

The defendant owned and operated a line of passenger buses between Greensboro, North Carolina, and Richmond, Virginia. From the testimony of the plaintiff it appears that she, with her small child, on December 7, 1928, became a passenger on one of the defendant's buses at Greensboro, and when the bus arrived at a point between Danville and South Boston, motor trouble developed which necessitated the transfer of the passengers from that bus to another bus which was sent out from Danville, and in this last bus the journey was continued. As soon as the driver started the substituted bus he noticed the odor of gas. When still in the vicinity of South Boston a gasket on the manifold of the motor blew out and then the odor of gas in the bus was much more perceptible, but the bus was not stopped. The plaintiff discovered that her eyes were burning, and the driver told her to take a seat further back in the bus, on account of the escaping gas, which she did. The driver noticed some irritation about his eyes and the gas gave him a sick headache for a short time. After proceeding a short distance further the bus was stopped and the plaintiff was helped out. She was helpless and in a semi-conscious condition, suffering from nausea and her nose was bleeding. She was taken by one Burke, who was going towards Victoria, which was her destination, and during this part of her trip she suffered from nausea, her nose bled considerably, and she felt like she was "choking." When she arrived at her sister-in-law's home in Victoria she was weak and still "choked up." That night she felt worse, vomited and could not rest. She still had the "choking" sensation and had difficulty in getting her breath. The next day Dr. E. L. Kendig was called to treat her and he visited the plaintiff professionally two or three times a day at first. She was under his care from December 8, 1928, to October 4, 1929, and was under his care at the

time of the trial. The plaintiff further testified that she was still suffering from the effects of the gas; that her lungs were better; that she was very nervous all the time and could not attend to her household duties; that at various times since she was made sick by the gas she had fainted, and that before this time she was very healthy and strong, able to do all of her domestic work, worked in the field helping her husband, and had never fainted before, but that she could do no work of any kind now.

Dr. Kendig, a physician of twenty-four years' experience, and the owner of a hospital, testified that he was called to see the plaintiff the day after she arrived at Victoria and found her "prostrated, in bed, suffering with intense headache, vomiting and shortness of breath." He was asked what caused her condition and he replied that from her symptoms and the history of the case it was due to gas poisoning. Then he stated that there were two kinds of gas poisoning, monoxide poisoning and a poisoning that comes from high test gasoline, and that her symptoms indicated that she was suffering from both kinds. He stated that the effect of monoxide poisoning, which is odorless, is to supplant oxygen and poison the blood; that the afflicted person would suffer from violent headache, shortness of breath, vomit and become prostrate and very nervous and generally weak; that in serious cases it would render one unconscious and produce death, and that it was a very deadly gas. He stated that the other gases referred to produced more irritation, have a mixed odor and the person who inhales them will have a violent cough, irritation in the eyes, nose and throat, and that they have a more lasting and permanent effect than monoxide gas poisoning. He stated that toxic gases from high-test gasoline, if inhaled in sufficient quantity, will render persons with weak lungs susceptible to tuberculosis, produce a dilated heart and leave them very neurotic and the nervous system upset.

He testified fully as to the plaintiff's condition from the time

he was first called in until the day of the trial, which covered a period of some eleven months.

A portion of his testimony is as follows:

"On December 8th when I saw her she had a moderate cough, pain through her chest on breathing, soreness in the upper part of the chest, a little thick expectoration, shortness of breath, some impaired resonance at the base of the lung—that means lung filled up a little on that side—severe headache and backache, and very nervous and restless, heart beat of 100 per minute and blood pressure of 6-100. In February these records here show on February 9th she still had a moderate pulse and soreness of the chest with thick expectoration, with headache at times—not all the time—and nervous and restless, although not as much as she had been; a wheezy expectoration in the lungs and blood pressure 105-60 and heart beat of 100 per minute with shortness of breath on exercise. Then on March 9th, one month after that—I can give you the dates of the examinations, too, but I only made these notes once a month. On March 9th she still had a moderate cough, soreness through her chest, slight expectoration, wheezy expectoration, breath sounds undiminished in upper part of lungs, blood pressure 105-70, heart beat still 100 per minute. On April 7th these records were made again—with slight cough, severe soreness through her chest, very little expectoration, headache occasionally, nervous, restless, upper part of lungs diminished resonance, a little cold, sounds of cold in the base of lungs, blood pressure 115-70, heart beat 100 per minute, shortness of breath on exercise. On May 12th the examination was practically the same as on April 7th, and on June 20th practically the same as that. On August 25th she had a moderate cough, slight expectoration and pain in the chest, more so on the right side, nervous most of the time and couldn't sleep well, blood pressure 120-75, heart beat 90 per minute, after one minute's exercise 120 per minute, with shortness of breath, bronchial breathing, especially over the right side, inter-

mittent headache and a slight enlargement of the heart, with occasionally you could make out a systolic murmur—that is a little leakage in the heart."

"Q. Doctor, from your treatment of the case during the eleven months that you have now been treating her, can you state whether or not the injuries that Mrs. Weeks has received are permanent?

"A. I wouldn't say positively they were permanent. I would think they are.

"Q. In your opinion they are permanent?

"A. In my opinion they are permanent, although I wouldn't say positively on the question. It would be hard for anybody to say positively on the question of gas poisoning at this stage of our knowledge of this form of poisoning.

"Q. Is her condition good now, Doctor?

"A. No, sir, her condition is not normal."

The facts stated and the testimony quoted cover substantially the testimony of the plaintiff and her witness, Dr. Kendig. If the verdict is to be sustained, it must be sustained on that evidence.

The first assignment of error is that the verdict is not supported by credible evidence. The defendant contends that the testimony of the plaintiff and Dr. Kendig is inherently incredible, unbelievable and of no probative value, and that the plaintiff was, and is, feigning illness in order to recover in this case.

If there is credible evidence to support the verdict, we cannot disturb it, regardless of how conflicting it may be.

Defendant bases its contentions that the plaintiff was "malingering" largely on the testimony of three physicans who were employed by the defendant to examine the plaintiff and testify in its behalf in the trial of the case. These three physicians testified that the plaintiff was "malingering," and if suffering at all, was not suffering from any form of gas poisoning. This examination of her took place in October, 1929,

some ten months after the time she claimed to have received her injury.

Whether the plaintiff was feigning illness, or "malingering," in order to recover in this case was a question for the jury, and the verdict is conslusive here that she was not. It is difficult to find a question so peculiarly for a jury.

It is therefore established by the verdict that the plaintiff was not feigning illness in order to recover in this case. From her testimony and the testimony of Dr. Kendig, which the jury believed, it is further established that she was made sick by the escaping gases from the motor which permeated the bus; that she was, from the time she was made sick by the gases until the trial, some eleven months afterwards, constantly under the care and observation of Dr. Kendig, suffering from the effects of the gases which she inhaled while she was a passenger in the bus on December 7, 1928; that after the acute stage had passed, she suffered from irritated throat and lungs, shortness of breath, slight enlargement of the heart and a systolic murmur—"that is a little leakage in the heart." It was further established by her testimony and the testimony of her family physician, Dr. Atkinson, and her neighbors, that she was, prior to the time she inhaled the gases which escaped in the bus on the occasion in question, in a good state of health, able to attend to all of her household duties and to help her husband work on the farm, and that since she received her injury she has not been able to do any of these things.

■ The defendant attempted to discredit the plaintiff's case by the following letter, which was written on December 7th, shortly after she arrived at Victoria.

"On returning from Danville to Barnes Store on December 7th, I was taken very sick from escaping gas, also the driver; as you know, he returned to South Boston and I went to Barnes Store on a hired truck with the promise that I would make the right connection there and when we arrived there the bus had been gone an hour. I have two receipts to show the amount I

paid; also they say they will witness to my condition when found on the road, they are Mr. S. P. Spurget, Barnesville, Va., and Mr. J. T. Burks, Red Oak, Va. Now I think twenty-five dollars is a very reasonable amount for all this trouble, providing the baby and I get along all right; hoping to hear from you at once."

The letter was presented in evidence before the jury along with all of the other facts in the case. It is observed, however, that the plaintiff agreed that $25.00 would be a reasonable amount, provided that she and the baby "got along all right." We must assume that the jury considered this letter in their deliberations and that they attached such importance to it as it demanded in the light of all of the other facts.

The defendant contends that inasmuch as the other passenger (who was the only other passenger on the bus) and the plaintiff's child were not injured by the gas, though exposed to it, and further that the evidence shows that no high-test gasoline was used on the occasion in question, shows that the plaintiff could not have sustained the injury she claims from the gases.

These facts were also presented to the jury along with all of the other evidence and, like the letter the plaintiff wrote, we must assume that the jury gave it due consideration. The jury may have thought that the plaintiff was susceptible to such gas poisoning while the child and the other passenger were not. The jury believed Dr. Kendig and, therefore, on his evidence, that the plaintiff suffered from both kinds of gas poisoning.

It is obvious that the jury accepted the testimony of Dr. Kendig and refused to accept the testimony of the three physicians called for the defendant. The medical testimony was directly in conflict. The jury was compelled to determine which of these witnesses made the most reasonable statement. It no doubt considered the important fact that Dr. Kendig had treated the plaintiff from the day after she received her injury until the trial, covering a period of eleven months, seeing her, at first, two or three times a day and following that by seeing

and observing her from time to time until the trial, while the other physicians saw and observed her for a few days some ten months after she received her injury. Dr. Kendig had a better opportunity to observe the plaintiff's conditions and was in a superior position to form an opinion on the question.

The weight to be given medical testimony is entirely a question for the jury, taking into consideration the intelligence, learning and experience of the witnesses, and the degree of attention which they give the particular question under investigation.

We are unable to say that Dr. Kendig's testimony is unreasonable and unworthy of belief. He had prior experience in treating patients who had inhaled poisonous gases, and made an exhaustive examination of the plaintiff. His conclusions are fortified by the fact that she was in good health before she received her injury and since has been sick and physically unable to attend her domestic duties. We are aware of no rule of law which would compel us to reject his evidence as incredible or unworthy of belief. We think the first assignment is without merit.

In the notice the plaintiff alleged that she suffered from inhaling carbon monoxide gas and "other gases." Before the trial the defendant moved to require the plaintiff to specify what "other gases" injured her. The court overruled the motion and this is made the subject of the second assignment.

The plaintiff is not required, in her notice, to furnish information in respect to matters of which the defendant has equal or superior knowledge. It would have been almost impossible for the plaintiff to have specified, with any decree of accuracy, the "other gases" and, besides, the defendant was in a better position to know about the "other gases" than the plaintiff. We think it would have been unreasonable to have placed this burden upon the plaintiff.

The defendant contends that it was prejudiced because the court permitted the plaintiff to testify that gases escaped

in the bus before it arrived at South Boston, while the notice alleged that the gases which injured her escaped into the bus at a point beyond South Boston.

We do not think this was error. It was competent evidence in order to bring home to the defendant's driver knowledge that gas was escaping into the bus, and that it was being made unsafe for passengers. It also was competent for the purpose of showing that the defendant's agent knew that the bus, mechanically, was unsafe and not in good repair.

The defendant's last assignment of error is that the verdict is excessive. What has been said regarding the first assignment of error applies here. This court has repeatedly expressed itself on this point and there is nothing to be gained by restating the familiar rule. We do not think the verdict excessive.

The judgment of the lower court is affirmed.

*Affirmed*