ROSE GLUCKSTEIN, as Administratrix, etc., of SIMON GLUCKSTEIN, Deceased, Appellant, v. JACOB MARTIN, Respondent.

First Department, March 15, 1935.

*Bernard Gordon* of counsel [*Howard W. Fensterstock* and *Jacob Robinsohn* with him on the brief; *Bernard Gordon*, attorney], for the appellant.

*William B. Davis* of counsel [*James E. Turner*, attorney], for the respondent.

McAvoy, J. Plaintiff, as administratrix, brought this action to recover damages sustained by herself and the next of kin resulting from the death of her husband, Simon Gluckstein, through negligence of the defendant in the conduct of the motorship *Glory*, at Sheepshead Bay, Brooklyn, N. Y., on January 5, 1931.

Simon Gluckstein, the plaintiff's husband, was found dead in the forward lower cabin of the fishing yacht *Glory*, about seven A. M., on January 5, 1931. The boat was owned, operated, managed and controlled by the defendant, and open for use by the public. The autopsy subsequently conducted on the body showed the presence of carbon monoxide to the amount of forty-five per cent. It was conceded at the trial that the cause of the death was carbon monoxide poisoning.

There was testimony to the effect that the decedent frequently slept on board the defendant's yacht, at the invitation of and with the permission of the defendant, and in the same cabin where his body was found.

At the time of his death the decedent was sleeping aboard the yacht following a fishing trip that day, and preparatory to another trip the next morning. The only other person who spent the night aboard the yacht was a man named Johnson, who was also found dead of carbon monoxide poisoning in the kitchen of the forward upper cabin the next morning.

There were two cabins, separated by an engine room, equipped with a Diesel engine of six cylinders and 360 horsepower, and two auxiliary engines. The engine room was directly behind the forward lower cabin and separated therefrom by a bulkhead or partition which extended completely across the ship from starboard outer hull to port outer hull, but which, where it crossed the space between the inner and outer hulls, was not solid, but was uncaulked, dried up, not watertight, and full of apertures of a quarter inch and a half inch between the timbers. There were no windows and no porthole in the cabin.

Plaintiff's theory of the happening of the accident is that the defendant permitted exhaust gases to flow from the engine into the cabins, and because there was no ventilation in the cabin where decedent was sleeping, the gases so flowing into the forward

sleeping cabin remained there until decedent had inhaled a sufficient quantity to produce death.

The decedent under the proof might have been an " invitee " of the defendant and was entitled to the care and protection that attach to such a relationship. The precise nature of the relationship between the defendant and the decedent was a matter, however, to be resolved by the jury upon all the facts and under proper instructions from the court.

We think that these facts afford a proper case for the application of the rule of *res ipsa loquitur* (*Webster* v. *Richmond Light & Railroad Co.*, 158 App. Div. 210), since the happening of the event indicates that some lack of care on the part of the person in control of the boat allowed the condition of danger to be created.

The judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

MARTIN, P. J., MERRELL and UNTERMYER, JJ., concur; O'MALLEY, J., dissents upon the ground that the principle of *res ipsa loquitur* is not applicable.

Judgment reversed and a new trial ordered, with costs to the appellant to abide the event.