## COASTAL COACHES, Inc. v. BALL.
### No. 4684.

Court of Civil Appeals of Texas. Beaumont. Nov. 9, 1950.

Rehearing Denied Dec. 6, 1950.

Strasburger, Price, Holland, Kelton & Miller, Dallas, Everett Lord, Beaumont, for appellant.

Adams, Browne & Sample, Beaumont, for appellee.

· R. L. MURRAY, Justice.

This is an appeal from a judgment of the District court of Jefferson County, in which the appellee Ball recovered judgment against appellant Coastal Coaches, Inc., for the sum of $9,660.00 as damages for personal injuries received by him as a result of being poisoned by the inhalation of gas while a passenger on a bus operated by the appellant.

The appellee, on February 8, 1949, was a passenger on appellant's bus from Beaumont to Galveston. The weather was bad at the time of the trip and considerable rain fell throughout the journey and the windows of the bus were kept closed. The appellee was a Negro man about 50 years of age, and was seated in the rear portion of the bus. He smelled and felt the effects of gases from the motor of the bus for sometime on the bus trip, and before the bus reached the Galveston-Bolivar ferry it stopped at High Island, a town about 25 miles from Galveston. At that point the bus stopped and many, if not all, of the passengers alighted and went into a small cafe. The appellee became very sick while seated at a restaurant counter. He was violently nauseated, and as he expressed it, "was heaving like a dog". It was necessary to carry him out in the open, he became unconscious and first aid was applied by a local constable. Other passengers seem to have been affected by escaping exhaust gas in the bus, for several were wiping their eyes at that time while it was stopped. The driver of the bus telephoned to the appellant's office in Galveston and secured another bus, which was driven over to meet him from Galveston. He transferred all of his passengers to the second bus and thus completed his journey to Galveston. The following day Ball went to a physician there who treated him. This physician testified by deposition that appellee was suffering from carbon monoxide poisoning, but was apparently recovered when he last saw him. By medical testimo-

ny appellee established that as a result of this gasing the appellee had headaches and was having trouble with his right shoulder, right ankle and head; that exposure to carbon monoxide for as long a time as eight minutes would result in hemorrhage of the brain, which hemorrhage would have a delayed effect on parts of the body. His medical witness also testified that inhalation of gas would cause a person's blood pressure to be elevated if he had high blood pressure at the time he inhaled the gas. Appellee and his wife both testified that he would wake up in the night with his head bothering him, that since the incident he had not been able to do a full day's work and to other ill effects upon the appellee's person of the gas inhalation.

The jury, by its verdict, in answer to special issues found that the appellant allowed exhaust fumes to enter the bus in such quantities as to be reasonably calculated to physically injure a passenger; that the appellee was injured by exhaust fumes from the bus while a passenger on the bus; that the appellant's act in allowing exhaust fumes to be in the bus was negligence and a proximate cause of appellee's injuries; that the bus body and exhaust mechanism on the bus was in such a defective condition as to allow exhaust fumes to enter the bus; that had the bus exhaust mechanism and body been properly inspected such defects would have been discovered and that the failure to inspect said bus was negligence and a proximate cause of appellee's injuries. The jury further found that appellee's injuries were not the result of an unavoidable accident. Various issues by which the question of contributory negligence on the part of appellee was submitted were answered favorably to the appellee.

Appellant filed its motion for instructed verdict at the conclusion of the plaintiff's evidence in the trial court and after the verdict of the jury was received it also filed a motion for judgment non obstante veredicto. Both of these motions were overruled. After its amended motion for new trial was overruled, judgment was entered upon the verdict of the jury and appellant has duly perfected its appeal.

The appellant presents its appeal under 8 points. The first 5 points assail in various ways the sufficiency of the evidence to support the judgment of the trial court.

Points Nos. 6, 7 and 8 complain of the action of the trial court in permitting appellee, over its objection, to read certain quotations from medical books and ask his medical witness whether he agreed with such quotations.

Points Nos. 1 to 5, inclusive, are briefed together by appellant and appellee and we will so consider them here. The appellant's first and second points state that there is no competent evidence in the record tending to prove any actionable negligence on its part and the trial court should have instructed a verdict in its favor and entered judgment non obstante veredicto. By its third and fourth points appellant complains of the trial court's action in submitting to the jury Special Issue No. 3, over its objection (1) that such issue did not inquire as to any specific act of negligence and such submission amounted to submitting the case on a general charge and (2) that the court should not submit the case to the jury on the theory of res ipsa loquitur. By its fifth point appellant complains of the action of the trial court in submitting to the jury Special Issues Nos. 7 to 11, inclusive, which issues submitted the theory of plaintiff's recovery that the bus body and exhaust mechanism was in a defective condition, and that the appellant failed to inspect it properly and discover said defective condition, over the appellant's objections that there was absolutely no evidence of any defect in the bus or in its exhaust mechanism.

Under these points the appellant argues that the doctrine of res ipsa loquitur is not in the case because the evidence shows conclusively that Ball, the appellee, was sitting by a bus window, and if he wanted to he was perfectly free to open the window and get fresh air. It says also that in his pleadings in the trial court the appellee was seeking to recover on the basis of specific allegations of negligence and therefore the rule of res ipsa loquitur has no application. It urges in support thereof the cases of Davis v. Castile, Tex.Com.App., 257 S.

W. 870 and Universal Atlas Cement Co. v. Oswald, 138 Tex. 159, 157 S.W.2d 636. With this argument we do not agree. The evidence was sufficient to support the jury's finding that the appellee was injured by exhaust fumes from the appellant's bus while he was a passenger on the bus, that the appellant and its employees had the bus and its operation exclusively within its control and that passengers on buses do not ordinarily become gassed by exhaust fumes without some negligence on the part of operators of the bus. We do not believe that the fact that Ball could have raised one of the bus windows alters the situation so as to cause him to be regarded as in partial control of the operation of the bus. The agency which was causing him harm while riding as a passenger on the bus was the condition and operation of the bus in such a manner as to allow the poisonous fumes of carbon monoxide gas from the exhaust of the bus engine to enter the bus where the passengers were riding. The appellee himself testified that he smelled gas on the bus before it arrived at High Island, but he had never been gassed before, did not know much about cars, could not drive one and thought at the time that he could stand it and did not know that he had been very greatly affected by the gas until he got off the bus and found that he staggered when he walked. He cannot be considered therefore as having been in anyway in control of the agency which produced his injury. As to the contention that the appellee here cannot rely on the rule of res ipsa loquitur, it is noted that in the instant case the appellee pleaded specific acts of negligence against the bus company only in the alternative. When this is done a plaintiff is not prevented from relying upon the res ipsa loquitur theory. Honea v. Coco Cola Bottling Co., 143 Tex. 272, 183 S.W.2d 968. Since we believe, as above noted, that the evidence is sufficient to show that the appellee was injured by the exhaust gases in the bus and that his being seated near a window, which he could have opened, did not serve to place him in any degree in control of the harmful agency which caused the gases to enter the bus, it follows that such an occurrence in the ordinary course of things does not happen if those who have the management in control of the bus had used proper care. We therefore find no merit in the objection of the appellant to submitting Special Issue No. 3, which inquired whether "the appellant allowed exhaust fumes to enter the bus in such quantities as to be reasonably calculated to physically injure a passenger".

Special Issues Nos. 7 to 11, inclusive, inquired whether (7) the bus body and exhaust mechanism on the bus was in such a defective condition as to allow exhaust fumes to enter the bus; (8) that had the exhaust mechanism and body of the bus been properly inspected such a defective condition would have been discovered; (9) that the appellant failed to properly inspect the bus prior to that particular trip; (10) that such failure to inspect the bus was negligence and (11) that such negligence was a proximate cause of appellee's injury. (Number 9 has been omitted in the copy of the charge in the transcript but we find it in the copy of the judgment.) The appellant's brief as to these issues seems in part to be in connection with its argument that the appellee could not rely upon the doctrine of res ipsa loquitur, since he had pleaded specific acts of negligence, and in part with the general proposition that there was no evidence to warrant the submission of such issues of specific negligence nor to support the jury's findings in answer thereto. From the testimony of the bus driver and the manager, there was proof of the type of construction of the bus and how it operated and how it was inspected before making the trip. The only evidence as to inspection was that the person making the inspection started the motor and listened to its operation and looked at some other details of the bus' condition, but does not show any inspection of the bus body or the exhaust mechanism which would have revealed a defective condition. While we believe that the evidence and the jury's findings are sufficient to support the judgment on the theory of res ipsa loquitur, without the additional findings of specific act of negligence in failing to inspect the bus, still we believe that such findings of negligence and proximate cause also find adequate support in the evidence.

The appellant argues that there is no competent testimony that the appellee suffered from any carbon monoxide fumes and says that the appellee's "whole case as to being gassed is founded purely on hearsay testimony, that is to say, what other persons told him had happened to him". While, of course, the appellee did not know the name of the chemical compound of a gaseous nature which affected him while riding on the bus, there is no question that he did suffer from exhaust fumes in the bus. The appellee established by the testimony of a chemist that carbon monoxide is contained in the exhaust fumes of motor vehicles and both physicians who testified established that the appellee had suffered physical injury as the result of carbon monoxide poisoning. While it is true that there were some statements made to appellee to the effect that he had been gassed, this fact does not detract from but rather adds to the other evidence in the record tending to prove that Ball in fact was injured by the inhalation of carbon monoxide gases. We think it of some significance that the bus driver himself, after the trip was resumed from High Island to Galveston, in a substituted bus, told Ball that he had been gassed and that he should get as much fresh air as possible. It is also of some significance that the bus driver did not proceed on the remainder of his journey from High Island to Galveston in the bus in which Ball had been riding to High Island but secured another bus from his company, because, as he testified, "he was afraid someone else might get gassed".

On the trial of the case Dr. E. C. Ferguson, a physician of Beaumont, also testified as an expert medical witness in behalf of appellee Ball. After he had testified at length as to his examination of appellee and the results thereof, he gave testimony as to the effects of inhalation of carbon monoxide on a human body. After he had testified at length upon this subject counsel for appellee asked him as to his knowledge of a book by Henderson & Haggard entitled "Noxious Gasses". He testified that it was a recognized medical book. Counsel then, over the objection of the appellant, was permitted by the court to ask him this question "Would you agree with this statement, (reading from the book) 'For this reason a man at rest can tolerate a temporary abolition of nearly thirty percent of the oxygen capacity of his blood by carbon monoxide and experience thereafter nothing more than a headache. If, however, he makes any considerable exertion the supply of oxygen to his tissues and particularly to his brain is inadequate and he faints.'" The doctor's answer to this question was "that is correct". He then testified in answer to a number of questions as to the effects of carbon monoxide. Thereafter during the same direct examination, the witness was asked a question about a book by Alice Hamilton, "Industrial Toxicology". After the witness testified that the book is a recognized medical authority, counsel for appellee was permitted, over the objection of the appellant, to read from that book as follows: "The asphyxia however differs from that caused by suffocation". The witness did not answer the question insofar as we can find in the statement of facts. Thereafter, after the witness had further testified as to the effects of carbon monoxide, the witness was again asked the question as to a book by G. Blumer entitled "The Therapeutics of Internal Diseases" and he testified that he was familiar with the book and that it is a recognized authority and he then was asked (reading) "If a patient is allowed to breathe ordinary air, it takes approximately one hour for the body to get rid of one-half of the carbon monoxide in the blood, and complete elimination is not accomplished for several hours more. Do you agree with this?" No answer by the witness is found in the statement of facts.

The appellant assails as reversible error the action of the trial court in permitting these three questions to be asked. In view of the fact that there was a relatively large amount of expert testimony in the case by the two physicians who testified in regard to carbon monoxide gas and its affect upon the human body, and the further fact that the brief passages read from the three books were not in any way in conflict with what the two doctors had testified to in detail, we do not believe any error is shown in the action of the court which would re-

quire a reversal of the judgment. The appellant itself introduced testimony which appears to be in accord with the principles announced in the quotations read from the books by appellee. As we view it the quotations did not concern any disputed issue in the case and could not have affected the outcome of the litigation. Much of the scientific knowledge of experts in medical, surgical, mechanical, chemical and other field of specialized learning is derived from scientific books and treatises; and knowledge would in general be small had they not availed themselves of the fruits of the research and experience of their predecessors as taught in books. The opinions of expert witnesses must be founded in some degree upon such books; in fact they may as a general rule in support of their professional opinions, read in evidence from standard scientific works which are recognized as such by the professions in which they are engaged. 20 American Juris. 814.

We doubt whether any error was committed in allowing the witness to be asked whether he agreed with the statement in the books. If it was error, it was harmless and does not warrant a reversal of the judgment.

The judgment of the trial court is affirmed.