**GREYHOUND CORPORATION,**
Appellant,

v.

**Juanita Jean BLAKLEY, a Minor, by Her
Guardian Ad Litem, Sidney W.
Blakley, Appellee.**

No. 15949.

United States Court of Appeals
Ninth Circuit.

Dec. 8, 1958.

Kenneth C. Hawkins, Richard R. Greiner, Yakima, Wash., for appellant.

Tonkoff, Holst & Hopp, William B. Holst, Blaine, Hopp, Jr., Yakima, Wash., Day & Westland, John A. Westland, Kennewick, Wash., for appellee.

Before FEE, HAMLEY and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge.

This is an action based on diversity of citizenship, 28 U.S.C. § 1332. The plaintiff is a citizen and resident of the State of Washington. The defendant is a corporation organized and existing under and by virtue of the laws of the State of Delaware. The matter in controversy exceeds, exclusive of interest and costs, the sum of $3,000.00.

The defendant appeals from a judgment based upon a jury's verdict which awarded plaintiff the sum of $78,097.50 for injuries sustained by the plaintiff while riding as a passenger in the defendant's bus. Defendant also appeals from an order of the trial court denying defendant's motion for a new trial or, in the alternative, for a judgment in favor of defendant notwithstanding the verdict.

The specifications of error of the trial court relied upon by the defendant are as follows:

1. Failure to grant defendant's motion for dismissal at the close of the plaintiff's case based upon the insufficiency of the evidence;

2. Failure to grant defendant's motion for a directed verdict at the close of the taking of all testimony;

3. Failure to grant defendant's motion for a judgment in its favor notwithstanding the verdict;

4. The giving of an instruction to the jury on the doctrine of res ipsa loquitur;

5. The withdrawal from the jury of the issues of contributory negligence, assumption of risk, and mitigation of damages; and the refusal to instruct the jury on such issues in the form requested in defendant's proposed instructions;

6. Submitting to the jury the question of the bus driver's negligence, on the ground such issue was not contained in the pretrial order, and on the further ground of insufficiency of the evidence;

7. Failure to grant a new trial on the ground that the award of damages by the jury was excessive and given under the influence of passion and prejudice.

In order to properly consider the defendant's specifications of error, it is necessary to briefly summarize the evidence which was before the trial court and the jury for consideration. Preliminarily, it should be stated that the taking of testimony consumed approximately two weeks. The testimony of 27 witnesses was received on behalf of the plaintiff, and the testimony of 29 witnesses was received on behalf of the defendant. In many areas the testimony was sharply conflicting and susceptible of varying and different inferences.

On Sunday evening, November 20, 1955, plaintiff, then nineteen years of age and then a freshman student of Washington State College, and two young girl friends who also were students at Washington State College located at Pullman, Washington, boarded defendant's bus at Spokane, Washington, for the return trip to Pullman, a distance of some 75 miles. The boarded bus shortly before its departure to Pullman had arrived from Lewiston, Idaho. The trip from Lewiston was uneventful, with no complaints from the passengers to the bus driver. Plaintiff and her two girl friends seated themselves in three seats in the rear of the bus, directly over the Diesel engine, which were the only seats avail-

able. Upon its departure from Spokane the bus was filled to capacity, carrying the bus driver and 37 passengers. Shortly after departure the three girls detected the odor of fumes. When the bus was in the vicinity of Spangle, Washington, but before it reached Rosalia, Washington, the fumes became more noticeable, and the plaintiff's two girl friends tried to open the windows but were unable to do so. Thereupon one of the girls notified the driver of the fumes and that she was feeling ill. The driver opened the window by his side, and she sat in the aisle until the bus reached Rosalia. Plaintiff and the other girl friend both felt sick and nauseated, and when the bus stopped for a passenger at Rosalia the two got out of the bus for fresh air. They returned to the bus and took their seats at the rear. Shortly after the bus left Rosalia they again felt sick, went forward and told the driver, who stopped the bus at Cashup, Washington.

The driver stated that this was the first time he had received any complaints or was aware of any fumes in the bus, although there is testimony in the record that the bus driver was so notified by the girl who first went forward and who sat in the aisle.

When the bus stopped at Cashup it had been on the road approximately fifty-five minutes from Spokane. Other passengers testified that they had noted fumes in the bus in the vicinity of Rosalia, and some had experienced sickness, including nausea and headaches, and had opened windows or put scarfs or handkerchiefs around their faces to protect themselves. Other passengers testified that they had noticed no fumes or had had no ill effects during or after the trip from Spokane.

At Cashup the driver helped the plaintiff and her girl friends off the bus, went to the rear of the bus, noticed fumes, and opened every window that could be opened. Meanwhile plaintiff had fainted while standing beside the bus, and had to be assisted back on the bus, where the bus driver made room for her at the front. Shortly thereafter plaintiff began gasping and throwing herself about in the seat and became irrational and semiconscious. Her condition was described as hysterical. Plaintiff remained in this condition until she was admitted to a hospital at Colfax, Washington, which was the next bus stop, where the driver arranged for the plaintiff to be hospitalized. The bus continued on to Pullman without the plaintiff, on which trip the windows of the bus were left open in spite of the cold weather. The radiator was covered with a winter front, and the engine was running hot. On arrival at Pullman the passengers on the bus who were traveling beyond that point were transferred to another bus, and the first bus was returned to Spokane without passengers and also driven by a new driver. Both these drivers reported, in writing, to the defendant's maintenance department that the engine was running hot and that the fumes were bad in the passenger compartment. Records indicate that the next day a new set of exhaust gaskets were installed in the engine of the bus, and work was done on the tube pipe.

At the hospital in Colfax Dr. Freeman diagnosed plaintiff's condition as hysteria and put her to bed. The diagnosis was based upon a fifteen-minute examination and was without aid of any information from the plaintiff, as she was unable to talk at that period. Dr. Freeman was in general practice, but apparently had had experience in carbon monoxide poisoning cases. The following morning the doctor talked with plaintiff, found her normal, and discharged her. The plaintiff then completed her trip to Pullman.

Upon her return to Pullman, plaintiff stayed in bed for one day, but thereafter continued in her regular college classes and activities. Her sorority sisters with whom she lived noticed that she seemed depressed, slept more than before, was afflicted with headaches, and appeared to have less energy. Her grades, however, improved, and she continued studying modern dance, actively participated in

sorority affairs, and continued to have many dates.

Plaintiff called her parents by phone on the day of her return to Pullman, complained of a headache and said she was not feeling well. During the Thanksgiving vacation plaintiff appeared tired, irritable and still complained of headaches and nausea. During the Christmas vacation plaintiff's complaints continued, and on December 28, 1955, upon the request of her father's attorney she was examined by a general practitioner at her parents' home in Kennewick, Washington. This doctor found plaintiff normal except for weak reflexes in the knees, a condition which her college record revealed she had before the bus trip. The doctor advised plaintiff's mother that she should see a specialist about her daughter's condition if she were still concerned. The plaintiff continued to complain, and still seemed to be nervous and emotional, whereupon her parents requested their attorney to arrange for a specialist to examine her. The plaintiff was examined on May 7, 1956 by a specialist in the field of psychiatry and neurology, who maintains his practice in Spokane. This specialist performed a psychiatric, neurological and physical examination. He called another specialist in for consultation, who gave plaintiff an electroencephalogram for the purpose of discovering the presence or absence of brain damage. After further tests and hospitalization of plaintiff, the first specialist diagnosed plaintiff's ailment as organic encepthalopathy as a result of toxin, specifically carbon monoxide, which was manifesting itself in convulsive phenomena. This diagnosis was subsequently confirmed by another specialist in the same field. Defendant's doctor stated that his examination revealed similar evidence, although he was unable to state what caused it, but that such evidence would not necessarily mean organic brain damage.

The plaintiff completed her freshman year at Washington State College in the spring of 1956, but did not return to college the following fall. Plaintiff was not informed of the diagnosis of the specialist, and in June of 1956 obtained work as a stenographer-typist at Richland, Washington, which employment was terminated on September 27, 1957. While thus employed the fellow employees of plaintiff noticed that she suffered from a certain amount of dizziness, headaches, occasional fainting, and an inability to drink properly from a cup. The cause of the termination of such employment is not clear in the record. The records of plaintiff's employer are to the effect that plaintiff had a civil suit pending and when it was settled she intended to get married and leave the area. The personnel manager who signed the notation on the personnel record could not remember any conversation with the plaintiff. The plaintiff stated she was asked to resign because of poor health and a bad attendance record; that her termination papers were prepared while she was on vacation, and that the termination had nothing to do with the legal proceedings. After learning of the notations in the personnel records, plaintiff mailed a letter to her employer to such effect.

Counsel for the defendant were given wide latitude in the cross examination of several witnesses of the plaintiff in an effort to elicit information as to occasions other than the bus trip on which plaintiff might have been exposed to carbon monoxide poisoning.

The defendant's first specification of error relates to the refusal of the trial court to grant defendant's motion for dismissal of the action at the close of the plaintiff's case. Following the denial of the motion, defendant did not rest, but proceeded to introduce evidence. In doing so the error of the trial court, if any, in denying the motion was waived. Mutual Life Insurance Co. of New York v. Wells Fargo Bank & Union Trust Co., 9 Cir., 86 F.2d 585; Sacramento Suburban Fruit Lands Co. v. Melin, 9 Cir., 36 F.2d 907.

Defendant's second and third specifications of error will be considered together. The second specification re-

lates to the refusal of the trial court to grant defendant's motion for a directed verdict at the close of all the evidence, and the third specification of error is the court's refusal to grant defendant's motion for judgment notwithstanding the verdict. In each of these two specifications of error, defendant fails to set forth the reason for the specification, but merely states that it is "for the same reason as stated in specification No. 1." This method of giving the reason for a specification of error by reference is not in strict compliance with the requirement of Rule 18(2) (d) [1] of this Court which requires that each specification of error shall be set out separately and particularly. Errors not specified in conformity with such rule need not be considered by this Court. Peck v. Shell Oil Co., 9 Cir., 142 F.2d 141. Notwithstanding defendant's failure to comply with the rule, we will consider the specifications since neither the appellee nor this Court has been misled.

These two specifications are grounded upon defendant's contention that there was no evidence that the defendant negligently permitted any unsafe quantities of carbon monoxide to be present in the bus.

Defendant does not deny that there were diesel exhaust fumes in the passenger compartment of the bus when the plaintiff became ill. There was evidence from which it could be inferred that such fumes contained some carbon monoxide. Defendant's position rather is that the evidence was insufficient to sustain a finding that there were sufficient quantities of carbon monoxide to cause the plaintiff's injury.

In support of defendant's contention that the evidence failed to establish dangerous or hazardous quantities of carbon monoxide in the bus at the time in question, defendant argues that no other passenger suffered the same effects as plaintiff; that the fumes were not sufficiently bad to cause more than three persons to alight from the bus to get fresh air; that several passengers on the bus were not able to even detect the presence of fumes at all; that several tests were conducted with the same bus and with other buses similar to it, in which the back seat was removed, the plate separating the engine compartment from the passenger compartment was removed, the seal broken, the exhaust manifold gasket partially removed, and the testing device placed just a few inches from the exhaust manifold; that these tests uniformly showed that there was less than ten parts of carbon monoxide per million parts of air in the bus; that persons in the bus during the tests showed no after effects of any kind; that experts in the field of industrial hygiene testified that standards set up by various governmental and private agencies permit 100 parts of carbon monoxide per million parts of air for an eight-hour period for persons doing physical labor; that any person can stand an exposure of from 400 to 500 parts per million of carbon monoxide for over an hour without any after effects; that ten parts per million of carbon monoxide could do no harm; and that a test testified to by one of defendant's witnesses, which was made one foot from the exhaust pipe, produced only 266 parts per million. From the foregoing recital, defendant argues that according to all of the evidence plaintiff had not been exposed for a sufficient period to have resulted in any injurious effects.

Other testimony in the record, however, is that fumes were noticed in the bus on the night in question just out of Spokane and for approximately one hour

---

1. "Rule 18. Briefs
 "1. * * *
 "2. This brief shall contain, in order here stated—
 "(a) * * *
 "(b) * * *
 "(c) * * *

"(d) In all cases a specification of errors relied upon which shall be numbered and shall set out separately and particularly each error intended to be urged. * * *"
Rules of the United States Court of Appeals for the Ninth Circuit (formerly Rule 20), 28 U.S.C.A.

before the plaintiff was removed from the bus at Colfax; that plaintiff had been seated at the closest point to the escaping exhaust fumes for approximately one hour; that the exhaust system on the bus was defective; that other passengers felt nauseated and had headaches; that some passengers who were unable to detect the presence of fumes noticed the discomfort and efforts of other passengers to avoid the fumes; that the nature of carbon monoxide poisoning is that it immediately gives one a sense of well being, then causes dizziness, headaches, nausea and impaired memory; that though the damage is immediate it takes sometimes as long as a year for the residuals to appear; that then the nervous system begins to show damage resulting in seizures, tremors, muscular incoordination, and that when the brain damage occurs it impairs memory, judgment, and the ability to think intelligently; that plaintiff had all of these symptoms, either immediately after the exposure or at subsequent times; that carbon monoxide poisoning does not affect all people alike, in that younger, more vigorous persons are more affected than older and less active persons; that 266 parts of carbon monoxide per million for one-third to three-quarters of an hour would do the damage complained of; that during the tests conducted by the defendant the diesel engine was not running hot and had just been overhauled; that there were only eight persons in the bus instead of thirty-eight; that these tests were conducted at a different elevation, resulting in different atmospheric pressure; the testing device was not placed at the exact spot where the plaintiff was seated. In addition, there was the testimony of plaintiff's specialist that she was suffering from carbon monoxide poisoning, and of defendant's specialist that his examination of the plaintiff revealed similar brain damage to that testified to by plaintiff's specialist but stating he did not know what caused it and that the results of the electroencephalogram test would not necessarily mean organic brain damage.

Appellant cites authority to the effect that the proof of the bare fact that an injury had occurred cannot of itself justify an inference that the injury was caused by the defendant, and that to do so would be to indulge in a presumption in order to justify a conjecture. Such authorities all deal with factual situations in which the plaintiff was unable to establish a causal connection between the injury and the acts of the defendant. In the instant case we are of the view that there was sufficient evidence upon which a finding might reasonably be made that there were sufficient quantities of carbon monoxide in the bus to cause the effects of which the plaintiff complains. Myers v. Little Church by the Side of the Road, 1955, 37 Wash.2d 897, 227 P.2d 165; Nelson v. West Coast Dairy Co., 1940, 5 Wash.2d 284, 105 P.2d 76, 130 A.L.R. 606; Lang v. Puget Sound Navigation Co., 1937, 189 Wash. 353, 65 P.2d 1069.

Appellant's fourth specification of error relates to the giving by the trial court of the instruction on the doctrine of res ipsa loquitur. We must first consider whether this claimed error has been properly raised on appeal.

Defendant failed to set forth in his opening brief the instruction which the trial court actually gave on res ipsa loquitur, as required by Rule 18(2)(d) of this Court.[2] However, the

2. "Rule 18 Briefs
 * * * * *
 "2. This brief shall contain, in order here stated— * * *
 "(d) In all cases a specification of errors relied upon which shall be numbered and shall set out separately and particularly each error intended to be urged. When the error alleged is to the admission or rejection of evidence the specification shall quote the grounds urged at the trial for the objection and the full substance of the evidence admitted or rejected, and refer to the page number in the printed or typewritten transcript where the same may be found. When the error alleged is to the charge of the court, the specification shall set out the part

omitted instruction was belatedly presented to the Court in the reply brief of the defendant. The plaintiff has not been misled and the defendant's original omission will be overlooked. Plaintiff asserts, however, that defendant's exception to the instruction as made in the trial court was not sufficient to meet the requirements of Rule 51 of the Federal Rules of Civil Procedure, 28 U.S.C. The defendant's exception drew the trial court's attention to the contention that the instruction as to res ipsa loquitur should not be given, because as contended by defendant plaintiff had failed to show there was a sufficient amount of carbon monoxide in the bus at the time that plaintiff became ill. We believe that there was a sufficient compliance with Rule 51. Broderick v. Harvey, 1 Cir., 1958, 252 F.2d 274; Thomas v. Union Railway Co., 6 Cir., 1954, 216 F.2d 18. Defendant makes no objection as to the form of the instruction.

■■ Turning to the merits of this issue, defendant contends that, in the absence of evidence that there was a dangerous amount of carbon monoxide in the bus at the time the plaintiff became ill, the District Court erred in finding the doctrine of res ipsa loquitur applied and in permitting the case to go to the jury upon that theory. In effect, what the defendant contends is that in this case the offending instrumentality—the cause of the plaintiff's illness—must be shown to have been in the bus before the doctrine can apply. Clearly this is the applicable law. Pacific Coast R. Co. v. American Mail Line, 1946, 25 Wash.2d 809, 172 P.2d 226; Parmelee v. Chicago, Milwaukee & St. Paul Ry. Co., 1916, 92 Wash. 185, 158 P. 977; McClellan v. Schwartz, 1917, 97 Wash. 417, 166 P. 783.

The same reasoning which led us to hold that there was sufficient evidence to justify the trial court in refusing to grant defendant's motion for directed verdict and for denying defendant's mo-

tion for judgment notwithstanding the verdict, compels us to hold that the jury could reasonably find under all of the evidence that carbon monoxide was in the bus in quantities sufficient to cause plaintiff's injury. It has recently been stated by the Washington Supreme Court, in Kind v. City of Seattle, 1957, 50 Wash.2d 485, 312 P.2d 811, at page 814, as follows:

"Where a plaintiff's evidence establishes that an instrumentality under the exclusive control of the defendant caused an injurious occurrence, which ordinarily does not happen if those in control of the instrumentality use ordinary care, there is an inference, permissible from the occurrence itself, that it was caused by the defendant's want of care. Nopson v. Wockner, 40 Wash.2d 645, 245 P.2d 1022. Legal control or responsibility for the proper and efficient functioning of the instrumentality which caused the injury and a superior, if not exclusive, position for knowing or obtaining knowledge of the facts which caused the injury, provide a sufficient basis for application of the doctrine. Hogland v. Klein, 49 Wash.2d 216, 298 P.2d 1099. When these circumstances are shown, the plaintiff has made a prima facie case, and it devolves upon the defendant to produce evidence to meet and offset the effect of the presumption. Hogland v. Klein, supra."

The bus was under the exclusive control of the defendant. The defendant as a common carrier for hire, while not an insurer of the safety of its passengers, owed to its passengers the highest degree of care consistent with the practical operation of its vehicles in its transportation business. Carbon monoxide in quantities sufficient to cause injury is not normally found in a bus if those in control exercise proper care. The defendant was the only one who could explain the cause of the presence of the

referred to totidem verbis, whether it be in instructions given or in instructions

refused, together with the grounds of the objections urged at the trial. * * * "

carbon monoxide in the bus. In view of the jury's verdict, it is apparent that the defendant failed in its production of evidence to overcome the presumption of negligence and thereby satisfy the jury that it was as probable that the defendant was not negligent as that it was. It is clear that there were carbon monoxide fumes in the bus. There is sufficient evidence in the record from which the jury could reasonably find that the plaintiff became ill from the presence of such fumes in the bus. There is evidence in the record of the physical and mental deterioration of the plaintiff symptomatic of carbon monoxide poisoning. There is evidence in the record that younger and more active persons are more susceptible to carbon monoxide poisoning than older and less active persons. There is evidence of one specialist that from his examinations, tests, treatment and history of the plaintiff that plaintiff suffered a brain damage caused by carbon monoxide poisoning. From the foregoing summary, we hold that the jury could reasonably infer that there were in the bus while plaintiff was a passenger therein sufficient amounts of carbon monoxide to cause plaintiff's condition.

In other jurisdictions whenever the question of carbon monoxide poisoning has arisen in connection with bus passengers [3] or from diesel engines,[4] the doctrine of res ipsa loquitur has been applied except where the symptoms developed just after the bus had emerged from a long tunnel.[5]

The fifth specification of error is that the District Court erred in withdrawing from the jury the issues of contributory negligence, assumption of risk, and mitigation of damages. Defendant has consolidated three separate and distinct claims of error in one specification. This is contrary to Rule 18(2) (d) of this Court. This specification of error need not be considered. Mutual Life Insurance Co. of New York v. Wells Fargo Bank & Union Trust Co., 9 Cir., 1936, 86 F.2d 585; Kobey v. United States, 9 Cir., 1953, 208 F.2d 583; Thys Co. v. Anglo-California National Bank, 9 Cir., 1955, 219 F.2d 131. Nevertheless we have reviewed the record as a whole and we have been unable to find that there was error in the withdrawing from the consideration of the jury the issues of contributory negligence and assumption of risk. We will discuss the issue of mitigation of damages at a later point in this opinion. The trial court concluded that there was no substantial evidence in the record to compel the giving of such instructions. Our review of the record compels us to agree with the trial court. The Supreme Court of the State of Washington has discarded the scintilla of evidence doctrine, and requires instead that the evidence sufficient to support a finding of negligence must be substantial. Ziomko v. Puget Sound Electric Ry., 1920, 112 Wash. 426, 192 P. 1009; Evans v. Yakima Valley Transportation Co., 1952, 39 Wash.2d 841, 239 P.2d 336; Neel v. Henne, 1948, 30 Wash.2d 24, 190 P.2d 775. Contributory negligence, being an affirmative defense on which the defendant has the burden of proof, the defendant must produce substantial evidence of the plaintiff's own negligence before the trial court is required to instruct the jury on contributory negligence. Jackson v. City of Seattle, 15 Wash.2d 505, 131 P.2d 172; Schneider v. Midwest Coast Transport, Inc., 51 Wash.2d 673, 321 P.2d 260. It is reversible error in the State of Washington to instruct the jury on an issue which is not supported by substantial evidence. Leavitt v. De Young, 43 Wash.2d 701, 263 P.2d 592, and cases cited therein.

There is no merit in defendant's claimed error regarding the withdrawal

3. Thomas v. Kansas City Public Service Co., Mo.App.1956, 289 S.W.2d 141; Coastal Coaches, Inc. v. Ball, Tex.Civ. App.1950, 234 S.W.2d 474, 22 A.L.R. 2d 955; Barnard Bus Lines v. Weeks, 1931, 156 Va. 465, 158 S.E. 870.

4. Gluckstein v. Martin, 1935, 244 App. Div. 39, 278 N.Y.S. 129.

5. Warshawsky v. Nevins Bus Co., 1931, 9 N.J.Misc. 227, 153 A. 114.

of the issue of assumption of risk. There is no evidence that plaintiff was aware of any danger in riding the bus from the presence of carbon monoxide. Before there can be assumption of risk there must first be a risk which the plaintiff can knowingly assume. Plaintiff was certainly not required to assume that there would be carbon monoxide fumes in the bus. She was not required to carry testing apparatus with her.

 With respect to the issue of mitigation of damages, defendant has failed to print in his opening brief his proposed instruction on this subject, but again has belatedly printed such proposed instruction in his closing brief. Attention has heretofore been called to the requirements of Rule 18 of this Court. Defendant has cited no authority in support of this specification of error. Again, we have considered the record carefully and we fail to find that defendant produced substantial evidence that plaintiff failed to obtain prompt or adequate treatment, or that she failed to follow proper advice. The court properly withdrew this issue from consideration of the jury.

 Defendant's sixth specification of error relates to the instruction given by the court regarding the negligence of the bus driver. Defendant's contention that the subject matter of this instruction was not included in the pretrial order or in the amendment thereto is without merit. This matter was covered in the pretrial order. See transcript of record, Volume I, page 13 and page 17.

Defendant also contends that the evidence was insufficient to establish that the bus driver was guilty of negligence. Defendant failed to include in its statement of points to be relied upon on appeal this specification of error. This is required by Rule 17(6) of this Court.[6] For such reason we are not required to consider this specification of error.

State of Washington v. United States, 9 Cir., 214 F.2d 33; Williams v. Dodds, 9 Cir., 163 F.2d 724. Furthermore, the instruction given was not set forth in the appellant's brief totidem verbis as is required by Rule 18(2)(d) of this Court. See Zimmerman v. Emmons, 9 Cir., 225 F.2d 97; State of Washington v. United States, supra; Woodworkers Tool Works v. Byrne, 9 Cir., 191 F.2d 667. We have, however, considered this specification of error. There is sufficient evidence in the record to justify the giving of such instruction by the trial court.

 The seventh and final specification of error is that the District Court erred in refusing to grant a new trial on the ground that the award of damages was excessive and given under the influence of passion and prejudice. It must be presumed that the amount of damages awarded by the verdict of the jury is correct. Anderson v. Dalton, 40 Wash.2d 894, 246 P.2d 853, 35 A.L.R.2d 302. Defendant fails to cite any specific instances of passion or prejudice occurring during the trial. Defendant suggests that the jury was probably improperly influenced by the plaintiff's personality and good looks. To what extent the jury may have been thus influenced is not mentioned. We find nothing in the record to show that the verdict was the result of passion or prejudice. In view of the record, we are unable to say that the verdict was excessive. Before the jury for consideration was the evidence that at the time of trial plaintiff had experienced difficulty in walking, in using eating utensils, in keeping her balance, and was still suffering fainting spells, headaches, halting speech, loss of memory and seizures. These items could be properly considered by the jury in assessing damages, in addition to elements of pain and suffering which the jury could properly consider. Rieger v. Kirkland, 7 Wash.2d 326, 111 P.2d 241. There was medical testimony before the

---

6. "Rule 17. Printing Records

 \* \* \* \* \*

 "6. In all cases, \* \* \* the appellant or petitioner, upon the filing of the record in this court, shall file with the clerk a concise statement of the points on which he intends to rely. \* \* \*"

jury that for an indeterminate period in the future medical treatment and medicine would cost plaintiff approximately $47.50 per month. There was testimony before the jury that plaintiff's loss of earnings would amount to at least $63.00 per week. Plaintiff's life expectancy was 47.43 years. These two amounts alone would aggregate more than $210,000 during the remainder of her life expectancy. We are unable to say under the evidence before the jury the award was excessive.

The record discloses this long arduous case was carefully and meticulously handled by the trial judge. No specification of error as to the receipt or rejection of testimony has been made. The trial court fairly and fully instructed the jury on all principles of law applicable to the facts of the case. We find no ground which would justify a reversal. The judgment is, therefore, affirmed.