HATTIE HANSON, Plaintiff-Appellee, *v.* CHICAGO TRANSIT AUTHORITY, Defendant-Appellant.

First District (2nd Division)    No. 63032

Opinion filed December 20, 1977.

Sal Bianchi, John J. O'Toole, and Ronald J. Lucaccioni, all of Chicago, for appellant.

Raymond P. Concannon, of Miller and Concannon, of Chicago, for appellee.

Mr. JUSTICE PERLIN delivered the opinion of the court:

Plaintiff, Hattie Hanson, brought this action against defendant, Chicago Transit Authority, to recover damages for injuries she claimed to have sustained when fumes from the exhaust system of defendant's bus entered the rear section of the passenger compartment of the bus where she was seated, causing her to suffer carbon monoxide poisoning. The jury returned a verdict in favor of plaintiff and assessed damages in the amount of $10,000. Defendant has appealed contending that: (1) plaintiff was guilty of contributory negligence because she did not take sufficient actions to protect herself from the fumes; and (2) the verdict is against the manifest weight of the evidence because plaintiff did not prove that

defendant was negligent or that its negligence proximately caused plaintiff's injuries.

Plaintiff testified that on the morning of March 9, 1971, she boarded bus No. 8650 at 70th Street and Jeffery Avenue and took a seat in the back of the bus. Several blocks later, as the bus accelerated, smoke and fumes arose from the area of the rear seat directly behind where plaintiff was seated. She became alarmed and asked another passenger to open a window. He tried, but he was unable to open a window. She then changed seats and moved forward in the bus, but the bus was crowded and passengers were standing. The smoke was very noticeable when the bus stopped and then accelerated. When the bus reached 50th Street, a window had been opened and plaintiff got her face as close as possible to the window to get fresh air. She remained in this seat for the remainder of the trip. A window was also opened opposite plaintiff which provided cross ventilation, but there were still fumes inside the bus. Plaintiff left the bus in downtown Chicago with the help of another passenger and told the driver there was an excessive amount of fumes in the rear. The driver made no comment. Thereafter, she started to vomit on the street and two men stopped a police squad car. The police took her to a fire station nearby where oxygen was administered. A fire department ambulance then transported her to the emergency room of Presbyterian-St. Luke's Hospital. She received treatment by oxygen mask en route. She remained in the emergency room until 2 p.m. that day, receiving oxygen treatment and undergoing various tests because she felt nauseous, faint and weak.

Plaintiff consulted Dr. Willis Diffenbaugh three days after the incident. She did not tell this physician that on March 8, 1971, she was riding in a CTA bus when an automobile struck it from the rear. This doctor examined plaintiff and thought fresh air would be helpful. Therefore, she went to Wisconsin, where she was treated by a Dr. Eckberg and a chiropractor. In January 1972 she returned to Chicago and was treated by Dr. Wiborg, who referred her to Dr. Spiegel. She was then hospitalized at Michael Reese Hospital for 11 days. At the time of trial she claimed that she still had difficulty with movement of her left arm.

Dr. Willis Diffenbaugh testified that he treated plaintiff for wooziness, light-headedness and respiratory problems. She also complained it was difficult to lift things and that she tended to drop things with her hands. On her last visit, on April 15, 1971, plaintiff seemed more clear mentally. Plaintiff wanted to go to Wisconsin and he thought it was proper. In his opinion the fumes she said she inhaled on the bus were "very likely" the cause of her complaints.

Dr. Joshua Spiegel testified that Dr. Walter Wiborg referred plaintiff to him and he saw her on February 13, 1973. She had a "dead" feeling at the back of her head from ear to ear, an inability to control her arms and chest

difficulty. He observed a trembling of plaintiff's left arm and hand. During a detailed neurological examination, he found diminished touch and a violent intention tremor of the entire left upper extremity. In his opinion, she was suffering from a lesion deep in the brain in the area of the basal ganglia. He explained that, of all organs, the brain is the most sensitive to lack of oxygen, which can be caused by carbon monoxide poisoning. In his opinion, the incident on the bus in which plaintiff inhaled carbon monoxide was sufficient to be the cause of her condition, and he discounted the occurrence of the previous day when the bus plaintiff was riding was hit by a car as having any causal relationship to her condition.

Robert Riley, a defense witness, testified that he was operating defendant's bus No. 8650 on the morning of March 9, 1971. Before he drove the bus that day, he did not examine it for its mechanical condition but only checked to see if it was running. And he had no recollection of the presence of any fumes. When he was shown an operator's sign-in sheet, an exhibit that contained a notation that there were "fumes" on bus No. 8650, he first answered that it looked like his handwriting. He then testified he did not know if it was his handwriting where the term "fumes" was written.

Gus Pavelka testified he was the defendant's foreman in the 52nd Street bus garage on March 9, 1971. He supervised maintenance work done on the buses. He testified that bus No. 8650 had last been inspected on February 10, 1971, and there was no indication of difficulty in the exhaust system. This vehicle was recalled because of "fumes in bus"; but, according to the records under his control, no trouble was found.

Gregory Rollberg, a defense witness, testified that he was the CTA repairman who worked on bus No. 8650 on March 9, 1971. He described in detail how he got the bus, brought it to the garage and checked it out. He found no trouble with the bus. On cross-examination, however, he testified that during eight years of his work he had inspected thousands of buses and he did not remember this particular bus. Rather, he was relying on his ordinary activities as the basis for his testimony.

Dr. David Petty, a defense witness, testified that he had reviewed plaintiff's medical records at the request of defendant. These records showed a level of 7.4% carbon monoxide in plaintiff's blood at the emergency room on the day of the incident. This physician said that such level was abnormal, but he claimed that no clinical symptoms ordinarily are observed in people with less than 20% carbon monoxide present in the blood. He further indicated that, in the city, persons exposed to carbon monoxide, such as traffic policemen and persons working in garages as well as those who smoke, may have higher levels between 8 and 12%. He further testified that carbon monoxide is a colorless, odorless gas which is very poisonous because it consumes the oxygen-carrying capacity of the

blood. He conceded that an insufficient blood supply can be the cause of injury to the basal ganglia but also indicated such condition could be caused by trauma.

Dr. Howard Simon testified for defendant that he saw plaintiff on April 5, 1971. She gave him a history of being involved in a bus accident on March 8, 1971, and of being in a bus on March 9, 1971, when exhaust fumes came into the bus. The latter occurrence caused her to be taken to Presbyterian-St. Luke's Hospital where a carbon monoxide test of her blood registered at an elevated level. During his examination he noted that plaintiff spoke childishly and seemed, in his opinion, to be paranoid. His neurological examination was negative except for the presence of a tremor of the outstretched hand. On cross-examination, he testified that the tremor he observed in plaintiff's hand might be caused by the presence of carbon monoxide or injury to the basal ganglia. And he expressed the opinion that carbon monoxide poisoning could also cause mental deterioration and psychotic behavior.

Plaintiff testified in rebuttal that she visited Dr. Simon only once. He recommended she delay seeking legal redress of the matter for a time. She also claimed that, when the examination was completed, Dr. Simon told her she was paranoid.

■■ Defendant, relying upon *Bitner v. Lester B. Knight & Associates, Inc.* (3d Dist. 1974), 16 Ill. App. 3d 857, 307 N.E.2d 136, contends that a person who voluntarily exposes herself to a danger of which she is aware is guilty of contributory negligence. Defendant contends a reasonable person would have informed the driver of the condition of the bus and would have exited the bus at one of its stops rather than waiting until the bus reached downtown. However, plaintiff did move to a different seat. She attempted to get close to an open window and she held her face to the window to get fresh air. Although plaintiff was aware of the presence of smoke, she may not have fully appreciated the danger of carbon monoxide poisoning and the possible consequences of such poisoning. Defendant's own experts testified that carbon monoxide is an invisible, odorless, but deadly gas. No doubt plaintiff was aware of the smoke and of the temporary inconvenience and difficulty it caused her. But it is not clear that plaintiff, who had to be helped off the bus, was able to get off earlier or negotiate through a crowded bus to reach the driver. Whether, given the circumstances, plaintiff was contributorily negligent presented a question of fact that was properly submitted to the jury. It is the function of the jury to determine the credibility of the witnesses and the weight to be attached to their testimony on controverted issues of fact and a reviewing court will not overturn its verdict unless it is against the manifest weight of the evidence. (*Wisniewski v. City of Chicago* (1st Dist.

1974), 20 Ill. App. 3d 650, 653, 315 N.E.2d 43.) We cannot say the jury's finding was against the manifest weight of the evidence.

We further reject defendant's contention that plaintiff was contributorily negligent as a matter of law. To reach such result the evidence must be viewed in light most favorable to plaintiff and must so overwhelmingly favor defendant that no contrary verdict could stand. (*Ragan v. Fourco Glass Co.* (1st Dist. 1977), 47 Ill. App. 3d 1, 5, 361 N.E.2d 707.) Plaintiff's conduct, as heretofore described, was not of this character, and we reject defendant's contention.

■■■ Defendant next contends plaintiff did not prove it was negligent or that its negligence caused plaintiff's injuries. It is well settled that the CTA is a common carrier and owes its passengers the highest degree of care. (*Fujimura v. Chicago Transit Authority* (1977), 67 Ill. 2d 506, 513, 368 N.E.2d 105.) The evidence was sufficient, if believed, to prove that defendant was negligent in that it allowed exhaust fumes, in large quantity, to enter the passenger portion of the bus. (See *Coastal Coaches, Inc. v. Ball* (Tex. Civ. App. 1950), 324 S.W.2d 474; *cf. Gluckstein v. Martin* (1935), 244 App. Div. 39, 278 N.Y.S. 129.) As the court in *Coastal Coaches, Inc. v. Ball* remarked: "[P]assengers on buses do not ordinarily become gassed by exhaust fumes without some negligence on the part of operators of the bus." (234 S.W.2d 474, 477.) It is apparent that the jury chose to believe the testimony of the plaintiff and her doctors that the brain damage she suffered was due to the carbon monoxide poisoning she experienced while riding defendant's bus on March 9, 1971. (See *Greyhound Corp. v. Blakely* (9th Cir. 1958), 262 F.2d 401, 408-09.) The jury's finding was not against the manifest weight of the evidence.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

DOWNING, P. J., and PUSATERI, J., concur.