**SIMPSON TIMBER COMPANY, a corporation, Appellant,**

v.

**PALMBERG CONSTRUCTION CO., a corporation, Appellee.**

**PALMBERG CONSTRUCTION CO., a corporation, Appellant,**

v.

**SIMPSON TIMBER COMPANY, a corporation, Appellee.**

**No. 20219.**

United States Court of Appeals Ninth Circuit.

April 5, 1967.

Rehearing Denied May 18, 1967.

---

382

Ryan, Askren, Carlson, Bush & Swanson, D. E. Kremer, Seattle, Wash., for appellant.

James O'Hern, Blair, Thomas, O'Hern & Daheim, Tacoma, Wash., for appellee.

Before CHAMBERS, MERRILL and KOELSCH, Circuit Judges.

KOELSCH, Circuit Judge.

This diversity action was brought by Palmberg Construction Co., a dredging contractor, to recover additional compensation for work done by Palmberg at the Shelton, Washington plant of the Simpson Timber Company. The work consisted of filling a portion of Simpson's waterfront property with materials to be dredged by Palmberg from the adjacent harbor area. The dispute arose because Palmberg asserted that the conditions encountered in performance of the job differed materially from those originally contemplated. Accordingly, not satisfied with the contractually agreed upon payment formula, it brought this

action seeking compensation over and above that provided for in the contract.[1]

Palmberg alleged that it was entitled to approximately $274,000.00 for performing the work but Simpson had paid it only $190,000.00; Simpson had offered to pay an additional $16,187.00 in full settlement but Palmberg had rejected the offer; accordingly, Simpson was still indebted in the sum of approximately $84,000.00.

Simpson admitted a present indebtedness to Palmberg of $16,187.00, but denied any further liability. By counterclaim it sought damages for Palmberg's alleged delay in completion of the work.

The jury returned a verdict for Palmberg for $34,508.57, a sum which included the $16,187.00 previously tendered. The jury found against Simpson on the counterclaim.

Both parties have appealed. Simpson's assignments of error generally concern rulings on the admission of evidence, the giving of instructions, and the denials of motions for directed verdict. Palmberg principally complains of the denial of its motion for supplemental judgment for interest on said sum of $16,187.00.

At the trial Palmberg presented several theories for recovery. In substance they were:

(1) that it was induced to enter into the contract by Simpson's representations regarding the location and availability of the materials to be dredged; these representations appeared on the face of a diagram prepared and submitted to bidders by Simpson; one of the representations proved to be incorrect; Palmberg justifiably relied on this representation; Palmberg was entitled to additional compensation for the extra work and expense made necessary by conditions being other than as represented [Cf. Maryland Casualty Co. v. City of Seattle, 9 Wash.2d 666, 116 P.2d 280 (1941)];

(2) that during the preliminary negotiations Simpson had knowledge that there existed in the areas to be dredged excessive amounts of debris; Simpson failed to disclose this information to Palmberg; such failure to disclose was tantamount to a representation that there would be no problem in regard to debris during the dredging; in the course of performance Palmberg in fact encountered substantial quantities of debris; as a result Palmberg suffered unanticipated costs which it is entitled to recover [Cf. Walla Walla Port District v. Palmberg, 280 F.2d 237 (9th Cir. 1960)];

(3) that the contract itself did not require Palmberg to dredge debris, such as bark, limbs, wire, sunken logs, buried pilings, etc., the presence of which adversely affected its operations; Palmberg as a necessary concomitant to its contractual obligation did in fact dredge debris; Palmberg should be paid extra for performing work not included within the express terms of the contract;

(4) that both parties entered the contract under a mutual mistake regarding a material fact (namely that the areas to be dredged did not contain excessive amounts of debris); this mistake gave Palmberg the right to rescind the contract [see, e. g., Ross v. Harding, 64 Wash.2d 231, 391 P.2d 526 (1964)]; Palmberg's forbearance of its right to rescind and its continuance of the work at hand gave rise to an implied promise by Simpson to renegotiate the contract price.

Simpson denied that Palmberg could recover on any of the above theories. For ease of presentation we shall discuss separately the validity of each theory

1. There was no single formal document denominated as a contract; rather, the governing agreement consisted of letters exchanged between the parties.

and the assignments of errors related thereto.

(1) As an aid in determining both the volume of fill material required and the areas in the bay from which the material could be obtained, Simpson prepared and furnished to prospective bidders a diagram. This diagram indicated that there were 350,000 cubic yards of material available to be dredged within an enscribed area (the primary dredge area). In fact, there were only 222,370 cubic yards of material in that area. Palmberg sought damages on the theory that this admitted error constituted a breach of an implied warranty as to the accuracy of the figures on the diagram and that as a result of this breach, Palmberg found it necessary to dredge at increased costs the missing 120,000 cubic yards from an area to the east of the primary area.

Simpson argues that this diagram was never expressly incorporated into the contract; the contract itself was complete and unambiguous; accordingly, the admission into evidence of the diagram violated the parol evidence rule.

■ In the State of Washington parol evidence is admissible only if a contract is ambiguous as a matter of law. It should not be introduced for the purpose of creating an ambiguity; rather it should be admitted only when the court has itself determined that parol is necessary in order to explain or remove an ambiguity apparent on the face of the instrument. See Washington Fish & Oyster Co. v. G. P. Halferty & Co., 44 Wash.2d 646, 659, 269 P.2d 806, 814 (1954).

Since the court did permit this diagram to be admitted into evidence, the issue thus becomes whether or not the contract was ambiguous in regard to the identification of the areas to be dredged.

In its letter of proposal (which constituted a part of the contract), Palmberg offered "to perform dredging in areas designated by you." Palmberg contends that the contract never specifically designated these areas and therefore, in order to fill in the missing terms, resort was properly made to the diagram upon which Palmberg relied in making its bid.

Simpson points to a clause in the contract under which Simpson was obligated to furnish Palmberg with plats or cross sections of surveys "for checking before dredging commences." Simpson contends that the contract is complete in itself because, by virtue of this clause, it possessed the unequivocal right to subsequently designate the particular areas from which materials should be taken.

Palmberg counters that this clause must be read in its proper context. The contract elsewhere provided that payment would be based on the amounts deposited in the fill, rather than the amounts dredged out of the cut. It further provided that the accuracy of Simpson's measurement of the fill would be substantiated by surveys made before and after dredging. If, as Palmberg contends, the sole purpose of these cross sections was to determine the proper pay quantities, these cross sections cannot be relied upon for a different purpose, namely designating the areas to be dredged. Cf. Guerini Stone Co. v. P. J. Carlin Construction Co., 240 U.S. 264, 277, 36 S.Ct. 300, 60 L.Ed. 636 (1916).

■■ Accordingly, we cannot agree with Simpson that this clause unequivocally provides a method of designating the areas to be dredged.[2] Consequently, the contract is ambiguous and the admission of the diagram (parol evidence) was not error. Since the jury could have determined that the diagram was thus a part of the contract between the parties,

2. Simpson would have us believe that another contractual clause also designates the dredging areas. In the contract Palmberg promised to provide "approximately 1,500 lineal feet of pipeline for the work to be performed." Simpson contends that this statement was equivalent to a promise to dredge any area subsequently designated by Simpson which would not require more than 1500 feet of pipe. Suffice to say that we do not concur in Simpson's interpretation of this clause.

the theory of implied warranty was properly in the case.

(2) Palmberg's theory that Simpson knowingly withheld information relating to the excessive amounts of debris calls into operation rules regarding the duty of one contracting party to provide the other with information concerning the subject matter of the contract.

It is well settled that in the absence of a duty to speak, silence as to a material fact does not of itself constitute fraud. Farmers' State Bank of Newport v. Lamon, 132 Wash. 369, 231 P. 952, 42 A.L.R. 1072 (1925). On the other hand, once a duty to disclose has arisen, suppression of a material fact is tantamount to an affirmative misrepresentation. Oates v. Taylor, 31 Wash.2d 898, 199 P.2d 924 (1948). However, businessmen dealing at arm's length are rarely under a duty to speak.

The trial court instructed the jury to the effect that Simpson was under an unqualified duty to disclose all relevant information in its possession. This was an incorrect statement of the law. In the case at bar Simpson would have had a duty to divulge all information in its possession with reference to debris only if such information was peculiarly within the scope of its own knowledge and not readily obtainable by Palmberg [Oates v. Taylor, supra], or if Palmberg made a broad inquiry regarding dredging conditions to which Simpson did not completely and truthfully answer. Lincoln v. Keene, 51 Wash. 2d 171, 316 P.2d 899 (1957). Since this instruction omitted these essential triggering elements, the court committed error in giving it.

Even if the court had correctly instructed the jury on this issue, we would still hold the instruction to be erroneous. We have carefully examined the entire record and have found no evidence from which a jury could justifiably infer that Simpson knew any facts which it wilfully withheld.[3] Obviously if Simpson knew no more than Palmberg knew there would be nothing to disclose. And even if we were to assume that Simpson did possess certain information which Palmberg did not possess, there is no evidence to show that this information could not have been acquired by Palmberg after reasonable investigation or that Palmberg made the necessary inquiry to trigger the duty of disclosure.[4] Since the record is devoid of evidence to support the theory of wilful nondisclosure, it was error to instruct the jury in this regard. See Shipp v. Curtis, 318 F.2d 797, 801 (9th Cir. 1963); Greyhound Corp. v. Blakley, 262 F.2d 401, 409 (9th Cir. 1958).

(3) Simpson answers Palmberg's debris theory with the assertion that the contract expressly provided for the occurrence of debris and Palmberg is not entitled to be paid more than once for what it contracted to do.

The contract provides that payment is to be on the basis of "an hourly rental rate per operating hour." An operating hour is defined as "an hour during which the dredge crew is engaged in the normal functions necessary to operation of the dredge, including time for clearing debris from dredge cut, dredge cutter, dredge pump or dredge pipelines * * *."[5]

---

3. On this basis we distinguish the case of Walla Walla Port District v. Palmberg, 280 F.2d 237 (9th Cir. 1960).

4. Palmberg did inquire about the possibility of running into large cobbles or boulders. We cannot accept Palmberg's contention that this inquiry was broad enough to require disclosure in regard to all subsurface conditions.

5. It would appear at first glance that Palmberg could suffer no damage by reason of time engaged in clearing debris. This is because it was paid on the basis of the number of operating hours it worked and any delay would be reflected in an increased number of operating hours. But as it turned out, Palmberg was really paid on the basis of the number of cubic yards it placed in the fill, not the amount of time it took to place them there. So long as Palmberg dredged less than 100 cubic yards per operating hour it received the equivalent of

Palmberg argues that the contract defined the materials to be dredged as "sand, gravel and cobbles;" the only reference to debris was found in the standard dredging definition of an operating hour, not in the definition of materials to be dredged; the mere insertion of this word as part of the payment formula could not force Palmberg to actually dredge debris.

█ Whether Palmberg was dredging debris or merely clearing it from the dredge pipelines seems to be a distinction without a difference. The contract in plain language provided for the possibility of encountering debris. Consequently, Palmberg must be treated as having assumed the risk of unknown conditions.

█ A contractor is not entitled to additional compensation merely because he encounters unforeseen difficulties. See Maryland Casualty Co. v. City of Seattle, 9 Wash.2d 666, 116 P.2d 280 (1941). Nor is a court warranted in reading ambiguities into an otherwise unambiguous contract in order to relieve such a contractor from a hard or improvident bargain. See Kanaskat Lumber & Shingle Co. v. Cascade Timber Co., 80 Wash. 561, 142 P. 15 (1914).

█ In the case at bar the court instructed the jury that Palmberg could recover additional compensation if the jury found that "under the terms of the contract the plaintiff was not obligated to dredge any substantial quantities of materials other than sand, gravel and cobbles * * *." We hold that the contract unambiguously provided a method of payment for time spent in cleaning (or dredging) debris. This instruction permitted the jury to award Palmberg moneys over and above those expressly contracted for, in effect to pay Palmberg twice for the same work. Since this theory is untenable, the giving of this instruction was error.

█ Simpson also asserts that to permit the admission of any evidence relating to debris was error. It contends that a so-called "partial summary judgment" entered during pretrial by a judge other than the one presiding at the trial required the exclusion of such evidence as a matter of law. But even assuming that the order of the pretrial judge should be interpreted as precluding all mention of debris (and this issue is debatable), this order would not foreclose the matter at trial. For until the entry of final judgment the trial judge remains free to interpret, alter, modify or even reverse such orders. See King v. California Co., 224 F.2d 193 (5th Cir. 1955), cert. denied, 352 U.S. 1007, 77 S.Ct. 569, 1 L.Ed.2d 551 (1957); Coffman v. Federal Laboratories, Inc., 171 F.2d 94 (3d Cir. 1948), cert. denied, 336 U.S. 913, 69 S.Ct. 603, 93 L.Ed. 1076 (1949).

In a colloquy with counsel immediately preceding the trial, the trial judge stated that he would permit the introduction of evidence relating to debris for the limited purpose of establishing that Simpson had information in its possession which it failed to disclose. Presumably such evidence would show that the actual

---

a flat rate of 40 cents per cubic yard without regard to how much time was spent in dredging. So if Palmberg dredged 100 yards per hour it would receive 100 x $0.40 or $40.00 for that hour. But if Palmberg spent five hours in dredging that 100 yards (averaging only 20 yards per hour), it would still receive only $40.00, even though it had worked four hours extra. Thus the more time Palmberg spent in clearing debris, the less would be its total revenue per hour worked.

The only time the operating hour formula would take on real meaning was if

Palmberg dredged in excess of 100 cubic yards per hour. In such a case the payment per cubic yard dredged decreased so that the total revenue per hour would not be so high as to provide an unreasonably large profit margin. Obviously the inverse correlation between price per yard and yards per hour takes into account the decreased profit resulting from excessive time spent in clearing debris. Palmberg's problem here is that its production dropped so far below 100 yards per hour (it fell to 65 yards per hour) that the increased price per yard did not make up for the extra time spent.

subsurface conditions were so radically different from those originally anticipated that a jury could reasonably infer that Simpson knew all along about the presence of excessive amounts of debris. Such an inference would be wholly improper. At any rate, the jury was never informed that the evidence was being admitted for this purpose only. Since the jury might have considered this evidence without limitation and might have used it as a basis for awarding damages for work already paid for under the terms of the contract, its admission was prejudicial.

For purposes of retrial, such evidence would be admissible for the limited purpose of showing increased costs as a result of a breach of warranty based upon the error in the diagram. If in fact substantially more debris was encountered in dredging the missing 120,000 cubic yards than would have been encountered if this amount had been present in the primary dredge area, the increased expense and loss of time would be recoverable items of damage.

■■■ (4) Palmberg's mistake theory is wholly untenable. "[B]efore a plain, unambiguous instrument can be set aside on the ground of mutual mistake, the evidence must be clear and convincing." Beaver v. Estate of Harris, 67 Wash.2d 621, 626, 409 P.2d 143, 146 (1965). There is no evidence in the record to indicate that Simpson had any belief whatsoever about the quantity of debris to be encountered in the course of dredging. On the contrary the inclusion of "debris" in the payment formula implies that Simpson intended that Palmberg bear the risk of any unanticipated increase in the amount of debris. Thus the mistake, if any, was not mutual but unilateral. Moreover, the evidence tending to support an implied promise by Simpson to pay additional compensation if Palmberg continued with the dredging is slim indeed. Since there is no evidence in the record to support a finding of mutual mistake, the giving of the instruction was error. See Shipp v. Curtis,

supra; Greyhound Corp. v. Blakley, supra.

■■■ We turn now to Simpson's counterclaim for damages for delayed performance. The argument is made that the proof conclusively established that Palmberg failed by several months to complete the work by the date agreed upon and that as a result Simpson sustained damages. We must disagree. The evidence admitted of conflicting inferences. It was properly the province of the jury to choose between them.

We now proceed to consider Palmberg's cross-appeal which, as noted earlier, involves the question of interest. The evidence was in substance that Palmberg, after completion of the work, filed a claim for additional compensation. Simpson rejected it but did admit liability for $16,187.00.

In a letter to Palmberg, Simpson said:

"Although we are willing to pay the sum of $16,187.00, as computed in the October 12, 1961 letter, we consider said sum to be Simpson's maximum remaining obligation to you. Should it not be acceptable as payment in full, Simpson will wish to offset its losses sustained by reason of your failure to complete the dredging operation within the time represented by you.

We, therefore, enclose our check in the sum of $16,187.00 as payment in full of all obligations of Simpson to you arising out of its Purchase Order No. 52471–PE, dated January 12, 1960, as amended by Supplemental Purchase Order dated February 17, 1960. Should it be unacceptable on that basis, we request that it be promptly returned."

Palmberg returned the check because it was "not acceptable on the basis submitted." Palmberg feared that if it kept the check it might be held to have waived its claim for additional compensation.

■■■ It is well settled that prejudgment interest is allowable on a liquidated claim. Mall Tool Co. v. Far West Equipment Co., 45 Wash.2d 158,

273 P.2d 652 (1954). Furthermore, interest is granted whenever a claim is for an amount due which is "determinable by computation with reference to a fixed standard contained in the contract * * *." Ibid. Here, the $16,187.00 represented exactly the remaining amount owing and due to Palmberg under the payment formula fixed in the contract. Thus the sum represented a liquidated or determinable claim upon which interest should have been granted.

Because the amount tendered did not in any way exceed the minimum sum due and owing, the tender could not be construed as an offer of settlement of Palmberg's claim for additional compensation. Nor does Palmberg's refusal of the tender mean that Palmberg considered the offered sum to be less than what it was entitled to receive under the payment formula in the contract. Palmberg's refusal of the check was motivated not by a dispute over the amount owing under the contract but by a fear of waiving its claim for additional compensation over and above that provided for in the contract. Similarly, Simpson's unliquidated counterclaim for damages resulting from a delay in completion could not affect the payment of interest on Palmberg's liquidated or determinable claim. Ibid.

■ Next, Simpson contends that even if the $16,187.00 was a liquidated amount, no interest is payable because there was a tender. Admittedly, a conditional tender of money does not stop the running of interest. Grant v. Auvil, 39 Wash.2d 722, 238 P.2d 393 (1951). But Simpson argues that its tender was unconditional.

Simpson relies upon a distinction between final payment on the construction contract and final payment on the construction work. Although it concedes that it was not entitled to a release of all of Palmberg's claims growing out of the work as a whole (without regard to the contract), it argues that it was entirely proper in return for payment to demand a release of all of Palmberg's claims under the contract. Cf. Walla Walla Port District v. Palmberg, 280 F.2d 237 (9th Cir. 1960). It then maintains that the tender was made in full payment only of Simpson's obligation under the contract. A settlement of this determinable amount would not in any way affect Palmberg's other claim for compensation outside of the contract. The tender did not require waiver of Palmberg's other rights and therefore was not improperly conditioned.

■ But Simpson is precluded from urging this argument because of its stipulation in the pretrial order that "Defendant has tendered to plaintiff its check in the sum of $16,187.00, which amount defendant tendered to plaintiff as payment in full of all obligations from defendant to plaintiff *arising out of the work performed.*" (Emphasis added). Accordingly the tender did not stop the running of interest.

Finally, it makes no difference that the amount admittedly owed was less than the total amount claimed by Palmberg. "The appellant had, of course, the right to contest the amount claimed from it; but surely it ought to have offered to pay the amount it admitted to be due. Instead of doing so, it withheld from the appellee for nearly seven years what it admitted was justly due from it. * * *." New Zealand Insurance Co. v. Earnmoor S.S. Co., 79 F. 368, 371 (9th Cir. 1897). See also Wright v. City of Tacoma, 87 Wash. 334, 151 P. 837 (1915).

We have examined all the other assignments of error made by both parties and conclude they are of insufficient merit to warrant discussion.

In conclusion, the judgment against Simpson on its counterclaim is affirmed, the judgment for Palmberg on its claim is reversed, and the cause is remanded to the district court for a new trial consistent with the views expressed in this opinion.