(No. 40681.—

Kenneth Haymes, Appellant and Cross Appellee, *vs.* Catholic Bishop of Chicago, Appellee and Cross Appellant.

*Opinion filed Nov. 22, 1968.—Rehearing denied Jan. 28, 1969.*

PHILIP H. CORBOY, JOSEPH V. MCGOVERN, and JAMES P. CHAPMAN, all of Chicago, for appellant and cross appellee.

HINSHAW, CULBERTSON, MOELMANN & HOBAN, of Chicago, (JOHN L. KIRKLAND and D. KENDALL GRIFFITH, of counsel,) for appellee and cross appellant.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

Plaintiff, Kenneth Haymes, a minor, was awarded damages of $10,000 in a jury trial in the circuit court of Cook County for injuries sustained in an accident in the St. Pancratius School, allegedly caused by the negligence of defendant, Catholic Bishop of Chicago. Plaintiff has appealed directly to this court, pursuant to Rule 302(a), on the issue of damages only, challenging the constitutionality of the provision of the School Tort Liability Act limiting liability of nonprofit private schools to $10,000. (Ill. Rev. Stat. 1959, chap. 122, par. 825B.) Defendant has filed a cross

appeal contending that the verdict is not supported by evidence, and that there were reversible trial errors.

The trial court rejected plaintiff's argument that section 825 B of the School Code limiting damages to $10,000 is unconstitutional in that it violated section 22 of article IV of the Illinois constitution and the "establishment of religion" clause of the Federal constitution.

Those constitutional questions are presented by plaintiff's direct appeal which is limited to the issue of damages only; however, inasmuch as defendant's cross appeal asserts that the record contains no basis for any liability, that issue must be determined first, and it requires a review of the evidence.

At about 3 P.M. on January 18, 1960, a snowy and overcast day, plaintiff a 7th grade student at St. Pancratius School, entered the cloakroom adjoining his classroom to obtain his coat prior to going on duty as a patrol boy. The cloakroom had one window, which was next to one of the doors connecting the room to the classroom, so that when the door was open the window was partially blocked. The cloakroom had one electric light which, according to plaintiff's testimony, was never lit, and was not lit on the day in question. The teacher didn't remember whether it was lit.

According to plaintiff's testimony the room was "dark" and the floor was "slippery." The floors of the cloakroom and classroom were linoleum. They had been waxed and buffed in September, 1959, and about once a month thereafter the "scuff marks" were removed with candle wax. That process involved grating church candles of beeswax onto the floor, and directing the children in their stocking feet to stomp the wax into the floor in the area of the scuff marks, and having them sweep it up the following day. Plaintiff testified that he and other pupils had helped the teacher in such activity after school. According to the testimony of plaintiff's teacher, the room was maintained by the

pupils and the same practice of removing scuff marks was followed in other classrooms. The teacher, Sister Obrenski, testified that the floor in the cloakroom was not slippery and she didn't know if anyone had slipped in any other room.

When plaintiff went into the cloakroom to get his coat, he slipped on a coat on the floor, and slid on his back some eight feet across the cloakroom, until his feet struck the wall with such force that he did a backward somersault. The coat was wrapped around his leg, and he was unable to move. Pupils passing the cloakroom doorway reported the accident to the teacher, who called the fire department and plaintiff's parents. Plaintiff was taken in an ambulance to the emergency room of the Holy Cross Hospital, where he was treated by Dr. William F. McDonald, the only medical witness in the case.

Inasmuch as the essential issues of the case involve the constitutionality of a statute and the existence of liability, the medical evidence will not be detailed, except to note that the plaintiff sustained a fractured hip, entailing two and possibly three operations, with permanent damage, and had to attend schools for physically handicapped children.

On the basis of substantially the foregoing evidence, along with evidence of medical, hospital and outpatient expenses incidental to the surgery and treatment, the jury returned a verdict for plaintiff for $10,000, which sum they were instructed not to exceed.

With respect to the issue of liability, presented by defendant's cross appeal, the law imposes on defendant a duty to plaintiff and other pupils to use reasonable care in the maintenance of St. Pancratius grammar school; and failure to do something which a reasonably careful person would do, or doing something which a reasonably careful person would not do under circumstances similar to those shown by the evidence, constitutes negligence.

The charge and evidence of negligence here related to

the lack of illumination in the cloakroom, and the slippery condition of the floor on which a coat had fallen.

In our view, the jury could have concluded that the cloakroom was not reasonably illuminated, not only from plaintiff's testimony that the room was "dark" so that he didn't see the fallen coat on which he slipped, but also from the evidence that the single electric light in the room was not lit, and the door from the classroom blocked over half of the only window in the room, as shown by the exhibit, and that any natural light was further diminished by the snowy and overcast weather that day.

In our judgment there was ample evidence from which the jury could have concluded that the illumination of the cloakroom, or the condition of the floor, maintained by children rather than adults, or those factors considered jointly, constituted negligence on the part of defendant in the maintenance of the cloakroom which defendant knew was constantly and hurriedly used by children. Therefore, we cannot accept defendant's argument that there was no evidence to support the jury verdict of liability, or that such verdict was contrary to the manifest weight of the evidence.

With respect to defendant's allegations of trial errors, permitting plaintiff to testify that the floor was "slippery" and that the cloakroom was "dark" certainly did not constitute reversible error. Not only has such opinion evidence been deemed proper, as a practical way to describe such conditions, (*Allen* v. *Matson Navigating Co.* (9th cir. 1950), 255 F.2d 274, 278; *Lubin* v. *Goldblatt Bros., Inc.*, 37 Ill. App. 2d 437; *Cole* v. *City of East St. Louis*, 158 Ill. App. 494, 501; *Marr* v. *Olson*, 241 Ia. 203, 40 N.W.2d 475, 479,) but as previously noted, those descriptions were substantiated here by other physical evidence from which those conditions could reasonably be inferred. In the *Matson* case the court stated: "We must * * * reject the suggestion that the testimony that the floor was slippery was not worthy of consideration because it was a mere expression

of opinion. It has long since been settled that a witness may give a shorthand rendition of a total situation or a description of collective facts without his testimony colliding with a rule excluding opinions." In the *Olson* case the court stated: "The question of whether it was dark or not was entirely a question for the jury. The court permitted various witnesses to testify that it was. In this the court was correct. A witness may testify that it was dark."

Nor was it reversible error to permit plaintiff's counsel to interrogate prospective jurors about their or their relatives' possible connection with insurance companies. The precise questions propounded here were permitted in *Moore v. Edmonds*, 384 Ill. 535, where the court stated at p. 541: "Judicial opinion almost universally recognizes the right of the plaintiff in good faith to interrogate the jurors on their *voir dire* examination as to their, or their relatives' possible connection with, or interest in, liability insurance companies, in order to determine the expediency of exercising his right to peremptory challenge to the end of obtaining a jury free from bias and prejudice, even though such inquiries may develop a suspicion in the minds of the jury that defendant is protected by insurance."

We recognize that the right to such inquiry requires that it be exercised "in good faith," as emphasized in *Wheeler* v. *Rudeck*, 397 Ill. 438. Defendant contends that plaintiff failed to comply with the good faith requirement of the *Wheeler* case in not laying a foundation for such questions. However, we find nothing in that case to indicate a format which plaintiff must follow to establish such "good faith." Quite the contrary intention is expressed in that opinion at p. 440: "We do not intend by the suggestions made to prescribe a practice that may develop into an interminable hearing as to the interest and occupation of prospective jurors, nor do we intend to adopt any particular form of question or substance to the exclusion of others."

This court has recognized that in a city the size of Chicago there are numerous liability companies with offices and connections in which prospective jurors might have an interest (*Smithers* v. *Henriquez,* 368 Ill. 588, 593), consequently, the trial court could not be deemed to have abused its discretion in allowing plaintiff's counsel to ask those questions of the jurors on *voir dire* examination. See 43 Ill. L. Rev. 650, 656 (1948).

Moreover, since defendant objected only to the insurance questions *per se,* and did not object to plaintiff's failure to make a proper foundation manifesting good faith before propounding the questions, which omission could have been cured if that objection had been timely made, therefore such objection should be deemed to have been waived. *DeMarco* v. *McGill,* 402 Ill. 46, 55.

We find no reversible error in the cross-examination by plaintiff's counsel of the teacher, Sister Obrenski, respecting her statement that she had no knowledge of possible falls in other classrooms, in view of her prior statements, without objection, that other teachers used the same method of having the children stomp candle wax into the floors to remove scuff marks.

Under our analysis, therefore, there is no error in the record warranting a new trial on the issue of liability. The decision of the trial court on that issue is affirmed and defendant's cross appeal is denied.

With respect to the issue of damages and the constitutionality of section 825B (Ill. Rev. Stat. 1959, chap. 122, par. 825B) challenged by plaintiff's appeal, that statute provides: "The amount recovered in each separate cause of action against a non-profit private school shall not exceed $10,000.00."

That provision is part of the comprehensive School Tort Liability Act (Ill. Rev. Stat. 1959, chap. 122, pars. 821-831) designed, as set forth in section 821, to protect public and nonprofit private schools conducted by *bona fide* ele-

emosynary and religious institutions from excessive diversion of their funds from their educational functions. The School Tort Liability Act of 1959 was one of numerous statutes enacted within two months after the decision of this court in *Molitor* v. *Kaneland Community Unit Dist.*, was announced on May 21, 1959, and before the rehearing and final decision in that case on December 16, 1959. (18 Ill.2d 11; see 55 Ill. B.J. 29, 30, 54 Nw. U. L. Rev. 588.) In *Molitor* the court abolished prospectively the tort immunity of school districts, and rejected as "unjust and unsupported by reason" the vestigial concept of government tort immunity. The legislature modified the *Molitor* decision by enacting that series of laws granting absolute immunity to some units of government and limited the liability of others. Some of those statutes have been held unconstitutional in violation of section 22 of article IV of the Illinois constitution insofar as they created an arbitrary and irrational pattern for imposing tort liability on governmental units. *Harvey* v. *Clyde Park Dist.*, 32 Ill.2d 60; *Hutchings* v. *Kraject*, 34 Ill.2d 379; *Lorton* v. *Brown County Community Unit School Dist.*, 35 Ill.2d 362.

Although the *Harvey* case held unconstitutional only the law granting tort immunity to park districts, and did not adjudicate the School Tort Liability Act, the opinion referred to that Act as part of this unconstitutional maze of arbitrary post-*Molitor* legislation. In fact, the court noted the arbitrariness of limiting to $10,000 the tort liability of public and private schools, whereas recovery against the Chicago Board of Education, which is required to insure its employees, was apparently unlimited.

The constitutionality of the School Tort Liability Act itself was first considered in *Lorton* v. *Brown County Community Unit School Dist.*, 35 Ill.2d 362, where the notice requirements (Ill. Rev. Stat. 1959, chap. 122, par.. 823) were deemed to violate section 22 of article IV of the Illinois constitution. The court enunciated the guidelines for

resolving the constitutional question at p. 366: "The courts of this State must be open to all those similarly situated upon the same conditions, and where procedures are provided which are applicable to some and not applicable to others under substantially like circumstances and there are no discernible logical reasons apparent for the variations, they must fall as violative of section 22 of article IV of the Illinois constitution."

On the authority of the *Harvey* and *Lorton* cases the court in *Treece* v. *Shawnee Community Unit School Dist.*, 39 Ill.2d 136, 145, in adjudicating a counterclaim, summarily held unconstitutional section 825A of the School Tort Liability Act limiting damages against public schools to $10,000.

The test of constitutionality of a statute under section 22 of article IV of the Illinois constitution, as set forth in the *Harvey* case at p. 64, is "whether the statutory classification is rational." The damage limitation of $10,000 for tort actions against public schools under section 825A, and against nonprofit private schools under section 825B is purely arbitrary as compared with the liability of other governmental units and institutions. Furthermore, after the *Treece* case declared unconstitutional the damage limitations applicable to public schools (section 825A), it would be erratic judicial law making, in derogation of the legislative intent, to sustain only the damage limitations applicable to nonprofit private schools. Such a result could certainly create an arbitrary classification among students whereby those attending public schools could recover the full measure of their damages resulting from the school's negligence, but those attending nonprofit private schools would be entitled only to a limited recovery. The arbitrariness of that result is contrary to the guidelines in the *Lorton* case, requiring, in effect, the same legal remedy for negligent injuries for all those similarly situated.

In our judgment the arbitrary classification created by

section 825B, particularly in view of the unconstitutionality of section 825A, violates section 22 of article IV of the Illinois constitution, as urged in plaintiff's appeal.

The judgment is therefore reversed and the cause remanded on the issue of damages only, as prayed for in plaintiff's direct appeal.

*Reversed and remanded, with directions.*