(No. 65735.—

BOGDAN BILYK, Appellee, v. THE CHICAGO TRANSIT AUTHORITY, Appellant.

*Opinion filed September 22, 1988.—Rehearing denied December 5, 1988.*

CLARK and STAMOS, JJ., took no part.

Joyce A. Hughes, of Chicago (William G. Clark, Jr., and Ilene Davidson Johnson, of William G. Clark, Jr. & Associates, Ltd., of counsel), for appellant.

Robert B. Morton, of Chicago, for appellee.

Julian C. D'Esposito, Jr., Robert T. Isham, Jr., and Clyde M. Hettrick, of Isham, Lincoln & Beale, of Chicago, for *amicus curiae* Regional Transportation Authority.

JUSTICE WARD delivered the opinion of the court:

The Chicago Transit Authority (CTA) brings this direct appeal under Supreme Court Rule 302(a) (107 Ill. 2d R. 302(a)) from a judgment of the circuit court of Cook County which held section 27 of the Metropolitan Transit Authority Act (Ill. Rev. Stat. 1985, ch. 111⅔, par. 327) unconstitutional. The section immunizes the CTA from

tort liability for any failure to protect passengers from criminal acts of third parties.

The plaintiff, Bogdan Bilyk, filed a complaint in the circuit court of Cook County charging the defendant with negligence and wilful and wanton misconduct. The complaint alleged that the plaintiff, while a passenger on a CTA bus, informed the driver that certain passengers, who appeared to be intoxicated, were smoking, being disruptive, and threatening to physically harm him. The plaintiff asked the driver to order the passengers to stop smoking, to evict them and to protect him. The plaintiff alleged that the driver took no action, even though he should have known an assault was likely and had an opportunity to eject the passengers or to summon police. He alleged that, as a result of the CTA driver's inaction, he was severely beaten by the other passengers and suffered permanent injuries.

The defendant, CTA, moved to dismiss the complaint, claiming that the action was barred by section 27 of the Metropolitan Transit Authority Act (Ill. Rev. Stat. 1985, ch. 111²/₃, par. 327), which absolves the CTA of liability in tort for criminal acts of third parties. The circuit court denied the defendant's motion, holding that section 27 violated the provisions of the Constitution of Illinois which guarantee a remedy for "all injuries and wrongs" (Ill. Const. 1970, art. I, §12) and which prohibit special legislation (Ill. Const. 1970, art. IV, §13). The court also held that the statute violated the equal protection guarantees of the United States and State Constitutions. (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2.) The CTA appealed directly to this court under Supreme Court Rule 302(a) (107 Ill. 2d R. 302(a)).

Three issues are presented: (1) whether section 27 of the Metropolitan Transit Authority Act (Ill. Rev. Stat. 1985, ch. 111²/₃, par. 327) violates the equal protection assurance of the Illinois and United States Constitutions;

(2) whether section 27 violates the proscription against special legislation in the Constitution of Illinois; and (3) whether section 27 violates the Illinois Constitution's guarantee of a remedy for all injuries and wrongs.

Section 27 of the Metropolitan Transit Authority Act (the Act) provides:

> "In the policing of its properties the Board may provide for the appointment and maintenance, from time to time, of such police force as it may find necessary and practicable to aid and supplement the police forces of any municipality in the protection of *** the persons and property of its passengers and employees ***. *** *Neither the Authority [CTA], the members of its Board nor its officers or employees shall be held liable for failure to provide a security or police force or, if a security or police force is provided, for failure to provide adequate police protection or security, failure to prevent the commission of crimes by fellow passengers or other third persons or for the failure to apprehend criminals.*" (Emphasis added.) Ill. Rev. Stat. 1985, ch. 111⅔, par. 327.

The emphasized sentence of this section was added by Public Act 84—939. That statute also added substantially similar language to other statutes to immunize the Regional Transportation Authority Act (Ill. Rev. Stat. 1985, ch. 111⅔, par. 702.08) and cities and counties which organize a local mass transit district (Ill. Rev. Stat. 1985, ch. 111⅔, par. 354).

Like all legislative enactments, section 27 carries a strong presumption of constitutionality (*Bernier v. Burris* (1986), 113 Ill. 2d 219, 227), and all doubts must be resolved in favor of its validity (*Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 363). Accordingly, the burden rests upon the plaintiff, as the challenging party, to rebut this presumption. *People v. Bales* (1985), 108 Ill. 2d 182, 188.

We first consider the plaintiff's claim that section 27 is arbitrary and creates unreasonable classifications vio-

lative of the proscription against special legislation and the equal protection guarantees. Although these constitutional challenges are separate and distinct, both are governed by the same standard on review.

The proscription against special legislation in the Constitution of Illinois prohibits the General Assembly from conferring a special benefit or exclusive privilege on a person or class to the exclusion of others similarly situated. In short, it prohibits legislation which arbitrarily discriminates in favor of a select group. (*Illinois Polygraph Society v. Pellicano* (1980), 83 Ill. 2d 130.) This constitutional provision supplements the equal protection guarantee, which prohibits arbitrary and invidious discrimination against a person or class. Whether a law is challenged as special legislation or as violative of equal protection, the controlling question is the same: Is the statutory classification rationally related to a legitimate State interest? (*Illinois Polygraph Society v. Pellicano* (1980), 83 Ill. 2d 130.) A statute will be held unconstitutional as special legislation and as violative of the equal protection guarantee only if it was enacted for reasons totally unrelated to the pursuit of a legitimate State goal. (*Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350.) The legislature has broad latitude and discretion in drawing statutory classifications to benefit the general welfare, and the classifications it makes are presumed to be valid. A legislative classification will be upheld if any set of facts can be reasonably conceived which justify distinguishing the class to which the law applies from the class to which the statute is inapplicable. *People v. Coleman* (1986), 111 Ill. 2d 87; *Schuman v. Chicago Transit Authority* (1950), 407 Ill. 313.

The plaintiff makes two arguments to support his claim that section 27 violates the equal protection guarantee and the proscription against special legislation. He first argues that section 27 arbitrarily classifies public

carriers differently from private carriers. He asserts that the services provided by the CTA are essentially the same as those provided by privately owned carriers and that there is no rational basis for placing the defendant in a different class than other carriers with respect to tort liability for failure to protect passengers from criminal conduct.

Statutory and common law provisions which differentiate between municipal and private corporations as to tort liability have been held reasonable and valid classifications under the equal protection and special legislation clauses. (See *Schuman v. Chicago Transit Authority* (1950), 407 Ill. 313; *Cooney v. Society of Mount Carmel* (1979), 75 Ill. 2d 430; *George v. Chicago Transit Authority* (1978), 58 Ill. App. 3d 692.) In *Schuman*, this court emphasized the CTA's status as a municipal corporation and the uniqueness of its function in rejecting a challenge to a provision of the Metropolitan Transit Authority Act which imposed upon claimants a notice-of-claim requirement and reduced the statute of limitations period for actions to be commenced against the CTA. The plaintiff claimed that the statute was unconstitutional because it did not impose similar limitations in actions initiated against private carriers. The *Schuman* court rejected the argument, holding that the legislature could rationally classify the CTA separately from private carriers, because "[t]he Authority is a municipal corporation, not entitled to make a profit, placing it in a different class from private carriers operating in the same area ***." *Schuman*, 407 Ill. at 320.

Here, too, we cannot accept the contention of the plaintiff that the difference between the provisions for liability of the CTA and private carriers violates the equal protection clause and the proscription against special legislation. The CTA, unlike private carriers, is a municipal corporation, relying heavily upon the public treasury

to subsidize the costs of public transportation. The substantial involvement of taxpayers in the funding of public transportation provides a rational basis for differentiating between the liability of governmental and private carriers upon a failure to prevent criminal assaults on passengers.

The courts and the legislature have recognized that the continued operation of the CTA is essential for the Chicago metropolitan area. (*People v. Chicago Transit Authority* (1945), 392 Ill. 77.) To insure that the mass transportation system will continue to serve the public, the legislature has authorized the use of public funds to defray the CTA's losses and has labeled all CTA funds as public property devoted to an essential governmental function and purpose. (Ill. Rev. Stat. 1985, ch. 111⅔, par. 333; see also *George v. Chicago Transit Authority* (1978), 58 Ill. App. 3d 692, 694.) Section 27 may simply reflect a legislative judgment that the costs and consequences of compensating individual passengers injured by criminal acts of third parties would be too burdensome for a publicly financed and operated transit agency; a burden which would be ultimately borne by taxpayers and fare-paying passengers. Because public funds are not involved when private carriers are held liable for failing to protect passengers from criminal assaults, the legislature could rationally refuse to extend the same immunity to such carriers. This court will not question the legislature's decision as to how to best allocate the funds available to subsidize public transportation. By immunizing the CTA from liability for any failure to protect passengers from criminal assaults, section 27 insures that CTA funds are spent on public transportation services and are not diverted to satisfy private damage claims by passengers injured by criminal acts of third parties.

As authority for his argument that private carriers must be granted the same statutory immunity as public carriers, the plaintiff cites two decisions which held that the tort liability provisions of the School Tort Liability Act (Ill. Rev. Stat. 1975, ch. 122, pars. 821 through 831) must be applied equally to public and private schools under the terms of that statute. (*Haymes v. Catholic Bishop* (1968), 41 Ill. 2d 336; *Cleary v. Catholic Diocese* (1974), 57 Ill. 2d 384.) Viewed in their proper context, these decisions do not support the plaintiff's contention.

After this court abolished local governmental immunity from tort liability in 1959 (*Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11), the legislature enacted a series of statutes later characterized as an "unconstitutional maze of arbitrary post-*Molitor* legislation" (*Haymes v. Catholic Bishop* (1968), 41 Ill. 2d 336, 343). Some of these statutes were subsequently held unconstitutional because they created an arbitrary and irrational pattern for imposing tort liability on governmental units. (*Harvey v. Clyde Park District* (1964), 32 Ill. 2d 60; *Lorton v. Brown County Community Unit School District No. 1* (1966), 35 Ill. 2d 362; *Treece v. Shawnee Community Unit School District No. 84* (1968), 39 Ill. 2d 136.) In *Lorton* and *Treece*, this court struck down sections of the School Tort Liability Act which limited the tort liability of public school districts because the same limitations did not apply to other public entities performing the same function. These decisions established that the legislature may not constitutionally distinguish between the tort liability of public entities performing the same function. The courts did not consider whether the legislature may constitutionally distinguish between public and private entities performing the same function.

In the two decisions (*Haymes v. Catholic Bishop* (1968), 41 Ill. 2d 336; *Cleary v. Catholic Diocese* (1974),

57 Ill. 2d 384) which the plaintiff cites for the proposition that the legislature may not constitutionally differentiate between the tort liability of public and private entities, the same statutory provisions that were struck down in *Lorton* and *Treece* were considered. In *Haymes* and *Cleary*, this court questioned whether the statutory limitations in the School Tort Liability Act which the *Lorton* and *Treece* court invalidated as applied to public schools (because they did not apply to other public entities) remained valid as applied to private schools. The *Haymes* and *Cleary* courts decided that it would contravene the legislature's intent to uphold the statutory limitations applicable to private schools after the same limitations were invalidated as applied to public schools. The courts emphasized, however, that the legislature was not constitutionally required to adopt a statute which classified public and private schools together.

Moreover, in *Cooney v. Society of Mount Carmel* (1979), 75 Ill. 2d 430, this court specifically rejected the proposition that the legislature must grant private entities the same protections from tort liability which it grants to public entities performing the same function. In *Cooney*, the defendant argued that the notice provisions of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act), which applied only to public schools, must also apply to private schools, so as not to violate the equal protection clause. The court rejected the argument, stating, "The General Assembly is free to treat public schools differently from private schools by including only public schools in the provisions of the Local Governmental and Governmental Employees Tort Immunity Act." *Cooney*, 75 Ill. 2d at 436.

The plaintiff next contends that section 27 violates the equal protection guarantee and the proscription against special legislation because it arbitrarily differen-

tiates between the CTA and other municipal entities with respect to liability for negligence in protecting persons from criminal attacks of third parties. He says that the legislature may not give the CTA absolute immunity under section 27 while other municipal entities remain liable in some instances for failing to protect individuals from criminal acts of third parties.

The plaintiff concedes that section 4—102 of the Tort Immunity Act immunizes municipal entities from liability in tort for failure to protect individuals from criminal acts of third parties. (Ill. Rev. Stat. 1985, ch. 85, par. 4—102.) The legislature excluded the CTA and other public entities operating as common carriers from the provisions of the Tort Immunity Act, because the "special relationship" between carriers and their passengers subjected carriers to a higher standard of care than applied to other municipal entities. (Ill. Rev. Stat. 1985, ch. 85, par. 2—101.) Section 4—102, in language virtually the same as that in section 27, provides:

"Neither a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes and failure to apprehend criminals." Ill. Rev. Stat. 1985, ch. 85, par. 4—102.

Although section 4—102 appears to provide absolute immunity for failing to prevent criminal conduct, the plaintiff points out that the judiciary recognizes an exception to this immunity where the police assume a "special duty" to protect a category of individuals from criminal acts. (See, *e.g., Gardner v. Village of Chicago Ridge* (1966), 71 Ill. App. 2d 373 ("special duty" found where the injured plaintiff accompanied police officers to the side of a highway to identify some persons who had attacked him earlier that day and was again as-

saulted because the officers failed to adequately restrain the suspects).) The plaintiff argues that this judicially created "special duty" exception to section 4—102 is analogous to the common law duty of common carriers to protect passengers from crimes, which arises out of the "special relationship" between a carrier and its passenger. (Restatement (Second) of Torts §314A (1965).) The plaintiff asserts that the legislature may not arbitrarily give the CTA absolute immunity for failure to provide adequate police protection, despite the existence of a "special relationship," while other local entities remain liable for failure to provide adequate police protection if a "special duty" is shown. Thus, he says that section 27 violates the equal protection guarantee and the proscription against special legislation because it arbitrarily accords the CTA with a broader immunity than other municipal entities enjoy with respect to negligence in protecting against criminal acts of third parties.

The response of the defendant is that section 27 is not vulnerable to those equal protection and special legislation challenges because it simply extends to the CTA the same *statutory* immunity afforded to other local public entities in section 4—102 of the Tort Immunity Act and that the judicially created exceptions to section 4—102 are not at issue. Alternatively, the defendant argues that section 27 is valid, even if it provides the CTA with more extensive immunity than other municipal entities enjoy, because the legislature may permissibly establish different standards of liability for municipal entities performing distinct functions.

We need not consider whether or not the common law duty of common carriers to protect passengers from criminal acts of third parties must be identified with and treated the same as the "special duty" exception to the immunity conferred on municipal entities in section 4—

102 for failure to protect individuals from crime. Even if we assume, *arguendo*, that the common law duty of carriers and the "special duty" exception are analogous, as the plaintiff puts it, and that section 27 provides the CTA with a broader immunity than other municipal entities enjoy under the Tort Immunity Act, we conclude that section 27 does not violate the equal protection guarantee or constitute special legislation. The plaintiff erroneously assumes that the CTA performs the same function as other municipal entities, and that the legislature may not accord the CTA a broader immunity than other municipal entities regarding protecting third parties from crime. We judge, however, that the immunity conferred on the CTA under section 27 is rationally related to the unique function and purpose of the CTA, and that the legislature may differentiate between the tort liability of the CTA and other municipal entities performing different functions.

The CTA was created by statute as a municipal corporation for the purpose of owning and operating a public transportation system. The legislatively recognized function of the CTA is to provide transportation to the public at large, rather than to guarantee the safety of every individual passenger. Consequently, complete uniformity between the immunity given the CTA and municipal entities whose primary purpose is to protect citizens from crime is not required.

This court has emphasized the uniqueness of the CTA's function when upholding statutes which classified the CTA differently than other municipal entities. For example, in *Fujimura v. Chicago Transit Authority* (1977), 67 Ill. 2d 506, the plaintiff challenged the six-month notice and the one-year statute of limitations provisions of the Metropolitan Transit Authority Act (Ill. Rev. Stat. 1973, ch. 111⅔, par. 341). The plaintiff in *Fujimura* argued that these provisions were unconstitu-

tional because a one-year notice requirement and a two-year limitations period applied to claims initiated against other municipal entities under the Tort Immunity Act. The *Fujimura* court concluded that the legislature could permissibly classify the CTA differently from other municipal corporations, because the sole function of the CTA was to operate and maintain a mass transportation system in the Chicago metropolitan area. The court observed that "a public entity having as its only purpose the operation of one of the largest mass transit systems in the United States performs a unique governmental function with its own peculiar problems having no parallel in the usual functions of other local governmental entities." (67 Ill. 2d at 513.) The court determined that the size of the CTA, its status as a common carrier and the large number of personal injury claims initiated against it provided a sufficient basis for distinguishing the CTA from other local governmental entities.

The legislative classification here is even more clearly a classification by function, *i.e.*, public transportation, than that at issue in *Fujimura* because language substantially similar to that appearing in section 27 was added to the Local Mass Transit District Act (see Ill. Rev. Stat. 1985, ch. 111⅔, pars. 354, 355.05) and the Regional Transportation Authority Act (see Ill. Rev. Stat. 1985, ch. 111⅔, par. 702.08). Thus, the General Assembly extended the same degree of immunity to all public entities engaged in the function of providing public transportation. The wisdom or unwisdom of this legislation is a matter outside of the scope of this court's permitted inquiry, and we will not nullify a legislative classification which rationally serves to preserve transportation funds for their intended purpose. Therefore, we conclude that the more extensive immunity given the CTA under section 27 does not violate the equal protection clause or the proscription against special legislation.

The plaintiff next contends that the General Assembly in enacting section 27 violated article I, section 12, of the Constitution of Illinois, which provides:

"Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation. He shall obtain justice by law, freely, completely and promptly." Ill. Const. 1970, art. I, §12.

The legislature is traditionally accorded a broad discretion to determine whether a proposed statute which would restrict or alter an existing remedy is reasonably necessary to promote the general welfare. Consistent with this, the "certain remedy" provision has been interpreted as an expression of political philosophy rather than as a specific mandate that the legislature preserve a particular remedy in its existing form. (*Sullivan v. Midlothian Park District* (1972), 51 Ill. 2d 274, 277.) This court has held that the "certain remedy" provision does not prevent the legislature from elevating the standard of care for tort liability from ordinary negligence to wilful and wanton negligence (*Sullivan v. Midlothian Park District* (1972), 51 Ill. 2d 274; *Clarke v. Storchak* (1943), 384 Ill. 564), or from restricting the type or amount of damages a party may recover (*Siegall v. Solomon* (1960), 19 Ill. 2d 145; *Smith v. Hill* (1958), 12 Ill. 2d 588). Nor does this provision bar the legislature from limiting the time within which an action may be brought, even if the statute could have the effect of barring a party's cause of action before the discovery of the ground for it. *Mega v. Holy Cross Hospital* (1986), 111 Ill. 2d 416.

Citing *Heck v. Schupp* (1946), 394 Ill. 296, the plaintiff argues that section 27 violates the certain remedy provision because it deprives him of any remedy for the injuries he suffered as a result of the defendant's negligence. In *Heck*, this court invalidated the so-called

"Heart Balm" statute, which abolished the common law actions of alienation of affections, criminal conversation, and breach of a promise to marry, because its effect was to leave one who suffered injury without a remedy.

The defendant acknowledges that section 27 bars the plaintiff from seeking a remedy from the CTA, but argues that the situation is distinguishable from that in *Heck* because the plaintiff continues to have a cause of action for personal injuries. It argues that section 27 does not violate the certain remedy provision because it simply restricts the class of potential defendants from whom the plaintiff may recover and does not deprive the plaintiff of a remedy for his injuries.

This court recently held that the General Assembly may restrict the class of potential defendants from whom a plaintiff may seek a remedy without violating the constitutional provision we are considering. (*Ostergren v. Forest Preserve District* (1984), 104 Ill. 2d 128.) In *Ostergren*, the plaintiff challenged section 5—1(I) of the Snowmobile Registration and Safety Act as violative of the certain remedy provision. That statute abolished the previously recognized tort liability of landowners for injuries to snowmobilers caused by the condition of their land, by providing that landowners, lessees and occupants did not owe a duty to keep their premises safe for snowmobiling. This court concluded that the statute did not abolish the plaintiff's cause of action in violation of article I, section 12, of the Illinois Constitution, because the plaintiff could seek relief from other persons. The court stated:

"Section 5—1(I) does not prevent the plaintiff from seeking a remedy for his injuries. The victim in a snowmobile accident can still sue the manufacturer, distributor or designer of the snowmobile, as well as other drivers, to name only a few of the myriad of possible defendants. *** Section 5—1(I) does not deprive a plaintiff of any

remedy; it merely restricts the liability of landowners who would otherwise have to undertake massive repairs to make their property safe for snowmobiling.

"We also note as a matter of public policy that the plaintiff's argument, if accepted, could make public parks useless for any recreational activities except snowmobiling. Forest preserves and public parks would have to be devoid of baseball mounds, streams, trenches and picnic equipment that could upset a speeding snowmobile." 104 Ill. 2d at 134.

Here, as in *Ostergren*, the statute in question does not abolish the plaintiff's cause of action for the injuries he suffered; it simply restricts the liability of one category of defendants. The statute does not preclude the plaintiff from seeking a remedy from the third parties. The statute here is even less restrictive than that considered in *Ostergren*, where the challenged statute may have foreclosed a plaintiff injured in a snowmobile accident from pursuing a cause of action where his injuries were caused solely by the condition of the land.

The plaintiff finally, and unconvincingly, argues that the statute here is distinguishable from that considered in *Ostergren*, because the immunity given the CTA is contrary to public policy. The General Assembly has recognized that a comprehensive system of public transportation is essential to public health, safety and welfare. The CTA performs an essential service for the public good. The legislature may reasonably decide to devote the moneys available exclusively to transportation costs and the welfare of the general public rather than to dilute those funds by compensating individuals harmed by third parties. We also observe that, while the legislature has exempted the CTA from liability, it has at the same time provided for additional public resources to strengthen general passenger security on public transportation systems. (Ill. Rev. Stat. 1985, ch. 111⅔, par. 704.01(b).) It has done this by exempting from the finan-

cial obligations of the CTA (and Metra and Pace as well) to the State up to $5 million per year, which is spent by the CTA to improve passenger security.

For the reasons given, the judgment of the circuit court of Cook County is reversed.

*Judgment reversed.*

CLARK and STAMOS, JJ., took no part in the consideration or decision of this case.