DENNIS EAGAN, Plaintiff-Appellant, v. CHICAGO TRANSIT AUTHOR-
ITY, Defendant-Appellee.

First District (3rd Division)   No. 1—90—0597

Opinion filed December 23, 1992.—Rehearing denied February 5, 1993.

GREIMAN, P.J., dissenting.

Corboy & Demetrio, P.C., of Chicago (Philip H. Corboy, Todd A. Smith, and David A. Novoselsky, of counsel), for appellant.

James D. Montgomery & Associates, Ltd., of Chicago (James D. Montgomery, of counsel), for appellee.

JUSTICE TULLY delivered the opinion of the court:

This appeal is concerned with the legal propriety of plaintiff's complaint. Plaintiff, in this instance, wishes to hold defendant, Chicago Transit Authority (CTA), liable for its failure to protect plaintiff from the criminal activities of an unknown third party, while both were passengers on a CTA elevated train. Plaintiff interceded in a situation in which an unknown culprit was attempting to pick the pocket of another passenger. As a result, plaintiff was stabbed by the third-party pickpocket. Plaintiff appeals from the dismissal of his complaint in negligence against the CTA.

Plaintiff filed a complaint against the CTA, alleging negligence, in that the CTA: (a) failed to monitor in any way whatsoever the train and its platform so as to become aware of pickpocketing and assaults;

(b) failed to respond in any way when the pickpocketing was observed by other passengers; and (c) failed to alert the Chicago police department that one of its patrons was being pickpocketed by a razor-wielding assailant. The trial court dismissed the complaint pursuant to section 2—619 (Ill. Rev. Stat. 1987, ch. 110, par. 2—619) of the Illinois Code of Civil Procedure, indicating that the CTA was immune from liability for a third-party assault, pursuant to section 27 of the Metropolitan Transit Authority Act (Ill. Rev. Stat. 1987, ch. 111⅔, par. 327) (section 27). The trial court also cited *Bilyk v. Chicago Transit Authority* (1988), 125 Ill. 2d 230, 531 N.E.2d 1, as a foundational basis for the dismissal.

At issue in this case is the interpretation of section 27, which reads:

> "In the policing of its properties the Board may provide for the appointment and maintenance, from time to time, of such police force as it may find necessary and practicable to aid and supplement the police forces of any municipality in the protection of its property and the protection of the persons and property of its passengers and employees, or otherwise in furtherance of the purposes for which said Authority was organized. The members of such police force shall have and exercise like police powers to those conferred upon the police of cities. *Neither the Authority [the CTA], the members of its Board nor its officers or employees shall be held liable for failure to provide a security or police force or, if a security or police force is provided, for failure to provide adequate police protection or security, failure to prevent the commission of crimes by fellow passengers or other third persons or for the failure to apprehend criminals.*" (Emphasis added.) Ill. Rev. Stat. 1987, ch. 111⅔, par. 327.

The emphasized language was added to section 27 in 1985 by Public Act 84—939. (Pub. Act 84—939, eff. Sept. 24, 1985.) Plaintiff contends that section 27 was not intended to provide a "blanket" immunity to the CTA which, as a common carrier, owes a common law duty of utmost care in providing safe transportation for its passengers. (*Garrett v. Grant School District No. 124* (1985), 139 Ill. App. 3d 569, 487 N.E.2d 699.) Rather, plaintiff argues that section 27 only immunizes the CTA from any liability for failure to provide police or security protection for its passengers. Moreover, this limited immunity in section 27 does not abrogate defendant's common law duty of care to the plaintiff-passenger in this case. For example, in *Gordon v. Chicago Transit Authority* (1984), 128 Ill. App. 3d 493, 470 N.E.2d 1163,

the CTA was found liable for an assault or other injury to one of its passengers, where it had reason to anticipate the misconduct, but failed to exercise the degree of care and vigilance practical under the circumstances to prevent the injury. However, *Gordon* was decided prior to the 1985 amendment to section 27, which added the immunity language regarding third-party criminals. Defendant contends that the amendment to section 27 effectively abolished any prior common law duty of public common carriers, such as the CTA, for failure to protect passengers from third-party criminal acts. Therefore, according to defendant, the holding in *Gordon* is no longer viable.

A statute in derogation of the common law must be narrowly construed. (*Possekel v. O'Donnell* (1977), 51 Ill. App. 3d 313, 366 N.E.2d 589.) It would appear, in the instant case, that the circuit court read into the statute involved here language and details far broader than the narrow confines of the actual language drafted by the legislature. According to plaintiff, the trial court mistakenly permitted the CTA to utilize section 27 as a general, all-encompassing statute, immunizing the CTA from liability for each and every injury suffered by any of its passengers. Plaintiff indicates that this statute should only apply to duties that the CTA has in relationship to providing security or police officers. In support thereof, plaintiff cites the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1987, ch. 85, par. 1—101 *et seq.*) (the Act or Tort Immunity Act), which provides immunity to other governmental bodies for failing to provide police protection. Section 4—102 of the Act reads:

> "Neither a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes [and] failure to *** apprehend criminals." Ill. Rev. Stat. 1987, ch. 85, par. 4—102.

The language of section 4—102 is almost identical to section 27, which applies specifically to the CTA. Plaintiff argues that there is no legislative judgment or intent evident in section 27, whereby the CTA should be granted greater immunity than other governmental entities. Under section 4—102, a defendant municipality may nevertheless be held liable for third-party criminal acts under what has come to be known as the "special duty" exception to governmental immunity. (See *Gardner v. Village of Chicago Ridge* (1966), 71 Ill. App. 2d 373, 219 N.E.2d 147.) The CTA was originally excluded from the Tort Immunity Act because of the "special relationship" between carriers and

their passengers and the higher standard of care imposed upon common carriers. (See *Bilyk*, 125 Ill. 2d at 241, 531 N.E.2d at 5.) At issue in this case is whether or not the "special duty" exception to immunity under section 4–102 can be analogized with the common law duty of common carriers to protect their passengers from the criminal acts of third parties—a duty which results from the "special relationship" between a carrier and its passengers.

■ Plaintiff's complaint relates to the failure of the CTA to respond in any way to the pickpocketing situation, which was observed by other passengers on the train, or to monitor the train or its platform. Allegedly, even the conductor of the train failed to notify the Chicago police department that a crime was being committed. This is a situation in which the CTA employees, including the various trained personnel employed by the CTA at the station, apparently failed in their duties. The CTA owes a duty of utmost care towards its passengers, to prevent injuries to passengers which reasonably could have been foreseen and, thus, avoided. (*Gordon*, 128 Ill. App. 3d 493, 470 N.E.2d 1163.) Common carriers have been found to have breached this duty where a passenger was assaulted by another passenger (*McCoy v. Chicago Transit Authority* (1977), 69 Ill. 2d 280, 371 N.E.2d 625); where a passenger was shot by another passenger (*Martin v. Chicago Transit Authority* (1984), 128 Ill. App. 3d 837, 471 N.E.2d 544); and where a passenger was injured by exhaust fumes (*Hanson v. Chicago Transit Authority* (1977), 56 Ill. App. 3d 17, 371 N.E.2d 884). Moreover, plaintiff's complaint alleged that prior "numerous attacks, as well as pickpocketing, had been committed upon its [the CTA] trains and platforms and generally upon its facilities against its customers. Such criminal acts include, but are not limited to, shootings, stabbings, robberies, assaults, rapes and batteries."

Defendant indicates that plaintiff's arguments are in error and must be rejected by this court. Defendant posits that section 27 was amended to show the legislature's intent to overturn the holding in *Gordon*, which held that the CTA could be liable for injuries incurred by a passenger as the result of the criminal activities of third parties. Defendant further states that the trial court correctly applied section 27 as well as the Illinois Supreme Court's decision in *Bilyk v. Chicago Transit Authority* (1988), 125 Ill. 2d 230, 531 N.E.2d 1. Defendant feels that no other reasonable interpretation of the events of the amendment to section 27 could be afforded and, therefore, the CTA would be immune by virtue of this revision of section 27 by the Illinois legislature.

According to plaintiff, the *Bilyk* decision did not resolve any issues relating to the extent of the underlying grant of immunity or the legislative intent of section 27. In *Bilyk*, the supreme court determined the constitutionality of section 27 and found that a classification as between public and private common carriers was not a classification in violation of the equal protection and special legislation clauses. (*Davis v. Chicago Transit Authority* (1990), 136 Ill. 2d 296, 555 N.E.2d 343.) *Bilyk* does not stand for the proposition that section 27 grants a blanket immunity to the CTA for injuries incurred by its passengers. Moreover, *Bilyk* does not address the issue presented in this case, that is, whether there exists a "special duty" exception to the immunity clause of section 27, similar to the exception carved out by the courts to section 4—102 of the Tort Immunity Act. Specifically, the court stated:

"We need not consider whether or not the common law duty of common carriers to protect passengers from criminal acts of third parties must be identified with and treated the same as the 'special duty' exception to the immunity conferred on municipal entities in section 4—102 for failure to protect individuals from crime." *Bilyk*, 125 Ill. 2d at 242-43, 531 N.E.2d at 6.

We agree that the statute should be interpreted in reference to the narrow situation involving the duty of the CTA to provide security or police forces. The plain meaning of the statute is that a common carrier is immune from liability "for failure to provide a security or police force or, *if a security or police force is provided* *** [for] failure to prevent the commission of crimes by fellow passengers." (Ill. Rev. Stat. 1987, ch. 111⅔, par. 327.) This is not the situation in the case *sub judice*. Here, plaintiff alleges injury by a third-party criminal *in the absence of* a security or police force. It is the feeling of this court that the CTA should not be granted immunity in this case. This is not contrary to the decisions of *Bilyk* and *Gordon*. *Gordon* stands for the proposition that the highest degree of care must be furnished by the CTA to its passengers. If you view a narrow interpretation of section 27 as correct, the holding in *Gordon* was not overruled by the amendment to section 27 and *Gordon* is still the law at this time. Moreover, plaintiff correctly states that *Bilyk* deals with a constitutional issue and is not applicable to the present case.

■ Unlike *Bilyk*, this case concerns the common law duty of common carriers to provide safe passage for their passengers and the so-called "special duty" exception to the governmental immunity granted to municipalities. (See, *e.g., Huey v. Town of Cicero* (1968), 41 Ill. 2d 361, 243 N.E.2d 214; *Kavanaugh v. Midwest Club, Inc.* (1987),

164 Ill. App. 3d 213, 517 N.E.2d 656; *Fessler v. R.E.J. Inc.* (1987), 161 Ill. App. 3d 290, 514 N.E.2d 515; *Galuszynski v. City of Chicago* (1985), 131 Ill. App. 3d 505, 475 N.E.2d 960.) The courts have carved out this exception to governmental immunity, where the status of the aggrieved party has been elevated "to something more than a member of the general public." (*Trepachko v. Village of Westhaven* (1989), 184 Ill. App. 3d 241, 540 N.E.2d 342.) Under the "special duty" exception to governmental immunity, four requirements must be met in order to sustain a cause of action: (1) defendant must be aware of the particular danger or risk; (2) defendant must undertake specific acts or omissions with respect to the danger; (3) these acts or omissions must be affirmative or willful in nature; and (4) the injury must occur while the defendant has direct and immediate control of the plaintiff. *Rush v. City of Chicago* (1987), 163 Ill. App. 3d 725, 517 N.E.2d 17.

■ Because we find that a similar "special duty" exception is available to litigants under section 27, we now consider whether plaintiff's complaint meets the minimum requirements of a special duty. Plaintiff has alleged that the CTA was aware that numerous attacks, as well as pickpocketing, had been committed upon its trains; that the CTA failed to monitor the train in any way and failed to respond to the pickpocketing which was observed by other passengers; and, finally, that the CTA failed to alert the Chicago police department that a passenger was being assaulted by a "razor-wielding assailant." Thus, plaintiff's complaint clearly meets requirements (1) and (2) above, since it alleges that defendant was both aware of the danger and failed to respond to it. Requirement (3) that the acts be "affirmative or willful" is also sufficiently satisfied by the above allegations. Although the acts were allegedly "negligent," one can reasonably infer from the allegation that the CTA failed to respond to the incident, that the CTA employees knew or should have known about the assault on plaintiff, and any failure to act, if proven, would constitute an affirmative omission. Finally, it can be reasonably inferred from the face of the complaint that plaintiff, as a passenger on defendant's train, was under the "direct and immediate control" of defendant. We, therefore, conclude that plaintiff's complaint sufficiently alleges facts which, if proven, could impose liability upon defendant pursuant to the "special duty" exception to governmental tort immunity.

In conclusion, section 27 cannot be construed as giving special treatment to the CTA, immunizing it from all liability in those situations which would advance an attitude of very little concern for passenger safety. If the CTA is concerned about the possibility of addi-

tional lawsuits, then additional vigilance on the part of the CTA is necessary.

For all of the foregoing reasons, this case is remanded to the circuit court of Cook County with directions to vacate the order dismissing this cause of action, with further instructions to allow this case to proceed on its merits or any such other relief that the court may deem just and proper.

Reversed and remanded.

RIZZI, J., concurs.

PRESIDING JUSTICE GREIMAN, dissenting:

The majority has construed the statute so narrowly that it is difficult to imagine why anyone sought its enactment. The majority states:

"The plain meaning of the statute is that a common carrier is immune from liability 'for failure to provide a security or police force or, *if a security or police force is* provided \*\*\* [for] failure to prevent the commission of crimes by fellow passengers.' (Emphasis added.) [Citation.]" 240 Ill. App. 3d at 789.

That might shed some light on the matter if those were the exact words and punctuation of the statute. Unfortunately, the majority has added the word "for" in the last line, connected it with the provision dealing with immunity for failure to provide a police force and eliminated a comma.[1]

However, if we examine the full text of the statute, we find that "failure to prevent the commission of crimes by fellow passengers or other third persons" is an independent clause in a series of several independent clauses. This is somewhat obscured due to the missing comma.

In the paragraphs that then follow, the majority concludes that the statute does not afford the CTA immunity because "plaintiff alleges injury by a third party criminal *in the absence* of a security or police force." (Emphasis in original.) (240 Ill. App. 3d at 789.) The

---

[1]"Neither the Authority [the CTA], the members of its Board nor its officers or employees shall be held liable for failure to provide a security or police force or, if a security or police force is provided, for failure to provide adequate police protection or security, failure to prevent the commission of crimes by fellow passengers or other third persons or for the failure to apprehend criminals." Ill. Rev. Stat. 1987, ch. 111²/₃, par. 327.

majority apparently believes the immunity is operative only when the crime is committed in the presence of the security police. This court considered this issue in *Cooper v. Chicago Transit Authority* (1991), 224 Ill. App. 3d 321, 586 N.E.2d 575, where plaintiff entered a bus and was beaten for five minutes and then stabbed by a group of youths. We concluded that the plaintiff's cause of action was within the scope of immunity provided by the statute.[2]

I agree that *Bilyk* stands only for the proposition that creating different standards of liability between public and private transportation carriers does not violate equal protection clauses of the State or Federal constitutions. However, section 27, except in the area of third-party criminal actions, does not seek to diminish the high degree of care required to be furnished by a transportation carrier.

Also, the legislature did not intend to provide the CTA immunity in those situations where it is guilty of conscious indifference in its conduct towards a passenger just as local governments remain liable for their willful and wanton conduct.

The majority suggests that the "special duty" exception to immunity granted to municipalities applies here and obviates the provisions of section 27.

While I believe that such an exception is appropriate in certain limited cases, the exception cannot be broadened to emasculate the impact of section 27. Moreover, the plaintiff must show that his status as one to whom the special duty is due is more than merely a member of the general public.

If we recognize the "special duty" exception, then the four requisites imposed upon claimants against public bodies must be satisfied. Those elements are that (i) the defendant must be uniquely aware of

---

[2]*Cooper* was reversed on other grounds, the cause of action having accrued prior to the 1985 enactment of section 27, which is without retroactive effect. (*Cooper*, 224 Ill. App. 3d at 325. See also *Hopkinson v. Chicago Transit Authority* (1991), 211 Ill. App. 3d 825, 570 N.E.2d 716.) Although this cause of action also accrued before the enactment of section 27, its facts might meet the criteria of a "special duty": opaque panels shielding a deserted end of a platform at a station which was the site of numerous criminal assaults. *Young v. Chicago Transit Authority* (1990), 209 Ill. App. 3d 84, 568 N.E.2d 18.

the particular danger or risk to which plaintiff is exposed,[3] (ii) there must be allegations of specific acts or omissions on the part of the defendant, (iii) the specific acts or omissions must be either affirmative or willful in nature and (iv) the injury must occur while the plaintiff is under the direct and immediate control of employees or agents of the municipality. *Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 565 N.E.2d 654; *Doe v. Calumet City* (1992), 240 Ill. App. 3d 911.

There does not appear to be any allegation that the CTA or its agents had any awareness of the particular danger to which plaintiff was exposed. Plaintiff alleges in his complaint that the CTA was aware "that numerous attacks, as well as pickpocketing, had been committed upon its trains and platforms." Such "awareness" addresses crime generally and does not meet the requirement that the CTA be aware of the "specific" act. To hold otherwise would impute specific knowledge of criminal acts to all municipalities since the mayors and managers of our cities are certainly aware of the crime statistics in our urban areas.

The plaintiff's complaint provides acts or omissions which might satisfy the second requirement of *Burdinie*; however, I question whether they are of such a character as to comply with the third prong of the test: that the acts complained of are affirmative or willful in nature.[4]

Application of the fourth prong of the test requires a more thorough analysis. The requirement that the public employee exercise direct and immediate control of the plaintiff is founded in the sound public policy that mandates the individual's status be elevated beyond

---

[3]Even before section 27 was enacted, the uniqueness of the danger was not always clear. (See *Haynes v. Chicago Transit Authority* (1978), 59 Ill. App. 3d 997, 376 N.E.2d 680 (past robberies at a particular station imposed a duty of vigilance on CTA to plaintiff who was robbed at 3 a.m.); *Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366, 50 N.E.2d 497 (defendant liable where station was located near a "hobo jungle").) Even *Gordon v. Chicago Transit Authority* (1984), 128 Ill. App. 3d 493, 470 N.E.2d 1163, might provide that unique danger to avoid the effect of section 27 since the plaintiff was attacked in an enclosed engineer's compartment which was left unlocked during late night hours when train cars were often deserted.

[4]Although generally a question of fact for the jury, courts have determined that there must be a period of time after appreciation of the danger within which the CTA employee has an opportunity to act to avert injury to the plaintiff. *McCoy v. Chicago Transit Authority* (1977), 69 Ill. 2d 280, 371 N.E.2d 625; *Watson v. Chicago Transit Authority* (1972), 52 Ill. 2d 503, 288 N.E.2d 476; *Letsos v. Chicago Transit Authority* (1970), 47 Ill. 2d 437, 265 N.E.2d 650.

that of a member of the general public before the "special duty" exception can impose liability upon the public body. *Doe v. Calumet City* (1992), 240 Ill. App. 3d 911.

A "special duty" was determined where the municipality's agent imposed "direct and immediate control" when plaintiff was in police custody to identify a suspect (*Gardner v. Chicago Ridge* (1966), 71 Ill. App. 2d 373, 291 N.E.2d 147) or where an officer manning a roadblock, and knowing that a car was speeding toward them, ordered plaintiff to stop and pull to the roadside (*Brooks v. Lundeen* (1977), 49 Ill. App. 3d 1, 364 N.E.2d 423) or where firefighters directed plaintiff assist them in closing an elevator door (*Anthony v. City of Chicago* (1988), 168 Ill. App. 3d 733, 523 N.E.2d 22). On the other hand, no such "special duty" was found in *Doe v. Calumet City* (1992), 240 Ill. App. 3d 911 (police arrived at the victim's apartment and failed to force immediate entry); *Galuszynski v. City of Chicago* (1985), 131 Ill. App. 3d 505, 475 N.E.2d 960 (police failed to respond to 911 call for 24 minutes during time which injury to plaintiff took place); *Huey v. Town of Cicero* (1968), 41 Ill. 2d 361, 243 N.E.2d 214 (African-American beaten by four youths, en route to employment office located in Cicero); *Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 565 N.E.2d 654 (plaintiff directed by swimming instructor to jump into pool).

Generally, the "special duty" exception has been narrowly construed. In *Marvin v. Chicago Transit Authority* (1983), 113 Ill. App. 3d 172, 446 N.E.2d 1183, the court dismissed plaintiff's complaint against the City of Chicago alleging he had been beaten by six young men on a CTA platform—where a city police officer, patrolling the station, directed plaintiff to go to the northbound subway platform because he believed the rowdies had gone to the southbound platform.

Plaintiff here came within the exception only if the "special duty" extends to every CTA patron—every person on CTA facilities. Such an interpretation would effectively repeal section 27.